SOPHIA M. COATS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coats v. Commissioner
Docket No. 9109-76.
United States Tax Court
T.C. Memo 1977-407; 1977 Tax Ct. Memo LEXIS 36; 36 T.C.M. (CCH) 1650; T.C.M. (RIA) 770407; November 23, 1977, Filed Sophia M. Coats, pro se. Marion Malone and James H. Ross, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $1,676.57 in petitioner's Federal income tax for the year 1974. The only issue presented for decision is whether the petitioner received taxable income of $7,000 in 1974 as a result of the settlement of a job discrimination suit under Title VII of the Civil Rights Act of 1964. [1]
FINDINGS OF FACT Most of the facts have been stipulated and are so found. Sophia M. Coats (petitioner) was a legal resident of Costa Mesa, California, when she filed her petition in this case. In October 1973 the petitioner filed a complaint against her employer, Uniroyal, Inc., in the United *37 States District Court for the Central District of California alleging violations of her civil rights by unlawful and discriminatory employment practices. The pertinent paragraphs of the complaint are as follows: 4. Plaintiff was first employed by Defendant UNIROYAL, INC. on October 26, 1961, at its plant at 515 Dyer Road, Santa Ana, California. Plaintiff is informed and believes and therefore alleges that in 1969, Defendant UNIROYAL, INC. began reducing the number of its employees at said plant because of lack of available work. At said time a much larger percentage of female than male employees were layed off. Plaintiff was classified as a "Dry Repair Mattress and Pincore Repair" Operator. All of the employees of Defendant UNIROYAL, INC. in said classification were female. Employees in the "General Service Man" Operator classification were male. General Service Man Operators were paid wages in excess of those paid to Dry Repair Mattress and Pincore Repair Operators although the skill, ability, efficiency, concentration, and speed in performance of duties of General Service Man Operators were less than that required of the lower paid female Dry Repair Mattress and Pincore Repair *38 Operators. During 1969, Defendant UNIROYAL, INC. permitted General Service Man Operators to perform the work of Dry Repair Mattress and Pincore Repair Operators for full days at a time and allowed such operators to work overtime while Defendant UNIROYAL, INC. reduced the number of female Operators who were employed to perform such work. Males steadily began replacing female employees. Because of such unlawful favoring of male employees, on or about March 17, 1970, Defendant layed off approximately thirty female employees, including Plaintiff. Plaintiff demanded, but was refused the right by Defendant UNIROYAL, INC., to bump down to and to take the jobs of less senior male employees as was her right under the then collective bargaining agreement in force between Defendant UNIROYAL, INC. and Defendant UNION. On or about February 1, 1971, Plaintiff was called back to work by Defendant UNIROYAL, INC. She was again layed off on March 30, 1971, and again she was refused the right to perform the work of less senior employees because of the policy and practice of Defendant UNIROYAL, INC. of unlawful sex discrimination. 5. Defendant UNIROYAL, INC. has invidiously discriminated against *39 Plaintiff solely because she is female in the following ways: (a) Paid her a lower rate of pay than males performing the same work; (b) Allowed males in the wrong job classification and with less seniority to perform her job functions and to work overtime, while she was denied this right and eventually layed off because of a work shortage; (c) Refused to allow her to perform the work of less senior employees when she had this capability and the right under the provisions of the collective bargaining agreement then in effect; and (d) Terminated her employment. 6. Plaintiff informed Defendant UNION as soon as she suffered each of the above mentioned incidents of sex discrimination and filed a grievance in March of 1970 alleging that Defendant COMPANY was favoring male over female employees in job opportunities. She thereafter complained to Defendant UNION repeatedly about her loss of job opportunities because of her female sex. Defendant UNION, however, failed, refused and neglected to process the grievance of Plaintiff and to investigate her complaints. It further failed and refused to represent Plaintiff or to investigate and initiate the proper forms of redress for *40 Plaintiff through the various state and federal administrative agencies available to protect Plaintiff's rights. 7. Defendants' actions, as herein alleged, were based on invidious and unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. 8. As a direct and proximate result of the wrongdoing described in the foregoing paragraphs, Plaintiff has sustained extensive loss in wages and other employment benefits. Plaintiff will amend this complaint to allege the exact amount of said losses when same have been ascertained by means of discovery proceedings. Petitioner sought a judgment for the "amount of past damages for wages and other employment benefits" arising from such unlawful practices by Uniroyal, for punitive damages of $25,000 and reasonable attorney's fees and court costs. In August 1974, petitioner's second attorney, Robert M. Ornstein, who was a specialist in civil rights litigation but was not a tax specialist, discussed with the petitioner the possibility of settling the case with Uniroyal. He apparently told petitioner that any settlement would be "tax free." In September 1974, the petitioner and Uniroyal settled *41 the case for a payment of $7,000. The settlement was in a lump sum with no agreement as to allocation between back pay and punitive damages. Petitioner signed a release. The amount of $1,500 was to be paid to Mr. Ornstein. The check for $7,000 from Uniroyal was endorsed by petitioner and given to Mr. Ornstein. A new check for $5,500 was signed by Mr. Ornstein and given to petitioner. On her Federal income tax return for 1974 the petitioner deducted $1,500 as an attorney fee but she did not report any of the $7,000 settlement proceeds as taxable income. In his notice of deficiency respondent determined that the $7,000 constituted taxable income to petitioner in 1974. ULTIMATE FINDING OF FACT The entire $7,000 was received by petitioner in 1974 as a payment in lieu of back wages. OPINION We find no support for petitioner's contention that the settlement proceeds were not taxable income to her in the year received.Back pay is, of course, compensation for services and is treated as an item of gross income under section 61, Internal Revenue Code of 1954. Back pay recovered under the Civil Rights Act of 1964 is taxable in the same manner as back pay *42 otherwise received. Hodge v. Commissioner, 64 T.C. 616 (1975); Johnson v. Georgia Highway Express, Inc.,417 F. 2d 1122, 1125 (5th Cir. 1969). Petitioner cannot prevail simply because she relied on incorrect advice from her attorney regarding the tax consequences of the settlement. The final settlement was in a single lump sum. It did not contain an allocation between back wages and punitive damages. Consequently, we hold that petitioner has not shown what portion, if any, of the settlement was for damages. On the authority of Hodge v. Commissioner, supra, we conclude that the entire $7,000 is includable in petitioner's taxable income for 1974. She is entitled to the claimed deduction of $1,500 for attorney's fees. Decision will be entered for the respondent. Footnotes
1. 42 U.S.C. sec. 2000e-5↩.