**Frank E. & Mildred E. RICKEL, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 89–1529.

United States Court of Appeals, Third Circuit.

Argued Jan. 22, 1990.

Decided April 3, 1990.

Dixon R. Rich (argued) and Dixon R. Rich, Jr., Rich, Fluke, Tishman & Rich, Pittsburgh, Pa., for appellants.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Ann Belanger Durney and Bruce R. Ellisen (argued), Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

1. Mildred E. Rickel appears to be a party solely because she signed the joint income tax returns which are in dispute in this appeal.

2. While § 2 of the Tax Reform Act of 1986 redesignated the Internal Revenue Code of 1954 as the Internal Revenue Code of 1986, the tax-

Before SLOVITER, HUTCHINSON and COWEN, Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

The appellant Frank E. Rickel ("the taxpayer")[1] received $80,000 from his former employer in 1983 and $25,000 in 1984 pursuant to a settlement of his Age Discrimination in Employment Act ("ADEA") lawsuit. This appeal requires us to decide whether the United States Tax Court properly determined that one-half of this settlement represented taxable income. Because we conclude that the entire settlement amount is excludable under 26 U.S.C. § 104(a)(2)[2], we will reverse the order of the Tax Court.

I.

The relevant facts of this case are not contested. The taxpayer was employed by Malsbary Manufacturing Company ("Malsbary"), Uniontown, Pennsylvania, as a general sales manager. In March 1979, when the taxpayer was 56 years old, the position of president opened up at the company. Despite the taxpayer's qualifications and past suggestions from company officials that the taxpayer would be considered for the post, the company hired a much younger individual as president.

Subsequently, the new president told the taxpayer that he wanted someone younger for the position of general sales manager. The taxpayer was thereafter relieved of his position in favor of a 37 year old individual, placed on partial pay, and eventually discharged on December 31, 1979.

After receiving a right to sue letter from the EEOC, the taxpayer brought suit in federal court against Malsbary and its parent, Carlisle Corporation ("Carlisle"), alleging a violation of the ADEA, 29 U.S.C. §§ 621–634 (1982). The taxpayer's amend-

able years and the significant underlying events in this case antedate the 1986 Act. Therefore, unless otherwise noted, all references to the tax code will be to the Internal Revenue Code of 1954, as amended.

ed complaint contained the following prayers for relief:

A. Order defendants jointly and/or severally to employ the plaintiff as President of Malsbary; or in the alternative to reinstate plaintiff to his former or a comparable position;

B. Order the defendants jointly and/or severally to pay back wages, benefits and other compensations found by the Court to be due plaintiff, together with interest thereon from the date when such amount became due;

C. Grant a judgment requiring defendants jointly and/or severally to pay appropriate back wages and an equal sum as liquidated damages, to plaintiff who has been adversely affected by the unlawful employment practices described herein;

D. Award counsel for plaintiff reasonable attorney's fees and expenses;

E. Award any further relief which is appropriate and proper under the circumstances.

App. at 58–59.

The taxpayer's action was tried before a jury in a bifurcated trial. The jury first heard evidence on the issue of liability. After the testimony, four interrogatories were submitted to the jury for their consideration:

(1) Was plaintiff ... qualified in April 1979 for the position of President of Malsbary ...?

(2) Was age a determinative factor in the decision not to promote the plaintiff?

(3) Was plaintiff ... qualified in August 1979 for the position of General Sales Manager of Malsbary ...?

(4) Was age a determinative factor in the decision to discharge the plaintiff from his job as General Sales Manager?

App. at 86.

While the jury was deliberating, the parties reached a settlement. The specific terms of the settlement depended upon the jury's answers to the interrogatories. When the jury answered all the questions affirmatively, the defendants were obligat-

ed to pay the taxpayer $80,000 immediately and $25,000 during each of the next four years. The settlement agreement did not allocate the settlement amount among the taxpayer's various prayers for relief.

Carlisle made the first payment of $80,000 in 1983, and paid $25,000 during each of the succeeding four years.[3] Only the receipt of $80,000 in 1983 and $25,000 in 1984 are at issue in this appeal. Carlisle did not withhold Federal income or Social Security tax from any of the payments. The taxpayer neither reported the $80,000 or the $25,000 as gross income nor disclosed these amounts on his 1983 and 1984 tax returns.

In a statutory notice of deficiency, the Commissioner of the Internal Revenue ("Commissioner") determined that the entire amount of $105,000 was taxable income. The Commissioner argued that the settlement proceeds represented either back pay or punitive damages, both of which the Commissioner asserted were taxable items of income. The taxpayer petitioned the Tax Court seeking a redetermination of the deficiency.

After a trial, the Tax Court found that one-half, i.e. $40,000 in 1983 and $12,500 in 1984, of the settlement was taxable income. The Court found that the other half of the settlement was excludable under § 104(a)(2). In addition, the Tax Court also denied the taxpayer's motion for reasonable litigation costs. This appeal followed. We have jurisdiction over taxpayer's appeal pursuant to 26 U.S.C. § 7482(a).

II.

The Internal Revenue Code ("IRC") states that "[e]xcept as otherwise provided ..., gross income means all income from whatever source derived...." 26 U.S.C. § 61(a). Accordingly, any accession to wealth is presumed to be gross income, unless the taxpayer can demonstrate that the accession fits into one of the specific exclusions created by other sections of the IRC. *Commissioner v. Glenshaw Glass*

---

**3.** Malsbary went out of business in 1986.

*Co.,* 348 U.S. 426, 429–30, 75 S.Ct. 473, 475–76, 99 L.Ed. 483 (1955).

The exclusion at issue here is § 104(a)(2) which reads in relevant part: "gross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness...." [4] Since the appropriate question to ask for purposes of § 104(a)(2) is whether the damages were received on account of personal injuries, *Threlkeld v. Commissioner,* 87 T.C. 1294, 1305 (1986), *aff'd,* 848 F.2d 81 (6th Cir.1988) (full Tax Court), it is important to determine exactly what the term "personal injuries" means for the purposes of the IRC.

 Unfortunately, neither the statute, Treasury regulations nor legislative history provides much guidance. *Id.* However, it is judicially well-established that the meaning of "personal injuries" in this context encompasses both nonphysical as well as physical injuries. *Bent v. Commissioner,* 835 F.2d 67, 70 (3d Cir.1987); *Roemer v. Commissioner,* 716 F.2d 693, 697 (9th Cir.1983); *Threlkeld,* 87 T.C. at 1297; *Seay v. Commissioner,* 58 T.C. 32, 40 (1972). *See generally,* L. Frolik, *Federal Tax Aspects of Injury, Damage, and Loss* 59 (1987). In addition, the Treasury regulations narrow the scope of excludable "damages" to "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c) (1989). *See generally Threlkeld,* 87 T.C. at 1297. Thus, "[t]he essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor." *Glynn v. Commissioner,* 76 T.C. 116, 119 (1981), *aff'd without published opinion,* 676 F.2d 682 (1st Cir.1982). *See also Byrne v. Commissioner,* 883 F.2d 211, 214 (3d Cir.1989) ("As defined by the relevant regulation, personal injury claims

assert violations of 'tort or tort type rights' "). *Accord Threlkeld,* 87 T.C. at 1305.

Consequently, the Tax Court has long held that "[i]f a taxpayer receives a damage award for a physical injury, which almost by definition is personal, the entire award is excluded from income [under § 104(a)(2) ] even if all or part of the recovery is determined with reference to the income lost because of the injury." *Threlkeld,* 87 T.C. at 1300. The compensation is exempt whether paid for earnings lost prior to the award or settlement, or for expected future earnings. Frolik, *supra* p. 658, at 9. As one commentator has explained:

Compensation [in the physical injury context] for loss of earnings is excludable even though the lost earnings would have been taxable if earned. Suppose, for example, that a taxpayer is tortiously injured, sues, and settles for $5,000, which is allocated $1,000 for pain and suffering, $2,000 for medical expenses, and $2,000 for wages lost prior to the settlement. Under § 104(a)(2), the entire $5,000 is tax exempt. Of course, if the taxpayer had not been injured and had actually earned the $2,000 in wages, that money would have represented an addition to gross income. Injured taxpayers who recover lost earnings are better off, in terms of taxes, than they would have been if they had not been injured.

*Id.*

However, the Tax Court has long treated claims for nonphysical personal injuries quite differently. In the nonphysical injury context, before deciding the tax consequences of an award or settlement, the Tax Court has mounted an initial inquiry to determine whether each of the components of the injury are personal or nonpersonal. *Threlkeld,* 87 T.C. at 1300. For example, if some of the damages received for the nonphysical injury are for mental or physical strain or personal embarrassment, then that portion of the recovery is excludable;

---

**4.** The Tax Court has given the term "on account of" in § 104(a)(2) its common meaning of "for the sake of," "by reason of," or "because of," *Miller v. Commissioner,* 93 T.C. 330, 339 (1989)

(explaining that an interpretation of the language requiring more than mere causation is strained and unnatural).

yet if some of the damages are recovered for economic or professional losses, e.g., back pay or lost income, then that portion of the recovery is taxable income. *See, e.g., Coats v. Commissioner,* 36 T.C.M. (CCH) 1650 (1977); *Hodge v. Commissioner,* 64 T.C. 616 (1975). *See generally* Frolik, *supra* p. 658, at 60–62.

The different treatment of physical and nonphysical personal injuries has sometimes led to tortured analyses and arbitrary results. Finally, in *Roemer v. Commissioner,* 716 F.2d 693 (9th Cir.1983), the Court of Appeals for the Ninth Circuit rejected this dual approach. In *Roemer,* the taxpayer, a successful independent insurance agent, brought a defamation suit against a credit agency which had misrepresented his credit history to various insurance companies. *Id.* at 695. After a trial in which the jury was told that the taxpayer had lost $135,000 in prospective income as a result of the defamation, the jury awarded him $40,000 in compensatory damages. *Id.* The taxpayer did not report the entire amount of the award as gross income and the Commissioner issued a notice of deficiency. *Id.*

The Tax Court determined that the taxpayer had not proven that the damages were in compensation for personal losses, e.g., personal embarrassment or damage to his personal reputation, rather than injury to the taxpayer's business or professional reputation, i.e., economic loss, and therefore the entire amount was taxable. *Id.* The *Roemer* court disagreed, noting that the only distinction found in § 104(a)(2) was between personal and nonpersonal injuries, not physical and nonphysical injuries. *Id.* at 697. The court explained further that:

> Th[e taxpayer's] injury ... should not be confused with the derivative consequences of the defamatory attack, i.e., the loss of reputation in the community and any resulting loss of income. The nonpersonal consequences of a personal injury, such as a loss of future income, are often the most persuasive means of proving the extent of the injury that was suffered. The personal nature of an injury should not be defined by its effect.

*Id.* at 699. Since defamation was a personal injury under California law, the court held that all the compensatory damages received by the taxpayer as a result of the injury were "excludable from gross income under § 104(a)(2), as would be the compensatory damages received on account of any personal injury." *Id.* at 700.

After *Roemer* was decided the full Tax Court, in *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), *aff'd,* 848 F.2d 81 (6th Cir.1988), accepted the reasoning of the Ninth Circuit in a 15–1 vote. Conceding that their differing treatment of physical and nonphysical injuries in the past was "analytically irreconcilable," *id.,* at 1301, the Tax Court held that:

> The Court of Appeals [in *Roemer*] viewed the problem of recoveries for defamation from the proper perspective. Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. Therefore, *whether the damages received are paid on account of "personal injuries" should be the beginning and the end of the inquiry.* To determine whether the injury complained of is personal, we must look to the origin and character of the claim, and not to the consequences that result from the inquiry.

*Id.* at 1299 (citations omitted) (emphasis added).

Admitting that the question of interpretation presented by the language of § 104(a)(2) presents "conceptual challenges" and that focusing on the nature of the taxpayer's injury rather than the consequences flowing from it will be difficult, the Tax Court explained however that:

> this [approach] is no more difficult in most cases than the type of inquiry previously required by the line of cases, culminating in [the Tax Court decision in] *Roemer,* which distinguished the nature of the consequences resulting from a claim. Furthermore, the approach that we will now apply in all cases, whether the injury claimed is personal, more accurately reflects the inquiry required by the plain meaning of the statute. Exclusion under section 104 will be appropriate

if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law. *Threlkeld*, 87 T.C. at 1308 (footnote omitted).[5]

In *Bent v. Commissioner*, 835 F.2d 67 (3d Cir.1987), this Court also adopted the unified approach of the Ninth Circuit, and applied it to an action brought under 42 U.S.C. § 1983 (1982). In *Bent*, a teacher claimed he had been denied re-employment for reasons which abridged his first amendment rights. *Id.* at 69. The school settled and the teacher received a sum based on his lost wages. *Id.* at 70. This Court rejected the Commissioner's argument that since there was no pain and suffering shown in the case, merely an economic loss resulting from the discharge, the suit was in reality one for lost wages not personal injuries. *Id.* Focusing instead on the nature of the claim, we explained that a denial of a civil right such as free speech involves a personal injury just as much as a physical assault, and, citing *Roemer*, held that as a result the whole of the taxpayer's

damages were excludable under § 104(a)(2) because "any economic injury proximately resulting, such as loss of wages ... may be compensated for in an award of damages for the personal injuries involved...." *Id.* at 71.[6] *See also Wulf v. City of Wichita*, 883 F.2d 842, 872–73 (10th Cir.1989) (holding that an award of damages specifically allocated to back pay as a result of a wrongful discharge in violation of first amendment rights under § 1983 was nontaxable under § 104(a)(2)).

Recently, this Court extended the analysis of *Roemer* and *Bent* both to a retaliatory discharge claim under the Fair Labor Standards Act ("FLSA") and a wrongful discharge claim under state law. *Byrne v. Commissioner*, 883 F.2d 211 (3d Cir.1989). The taxpayer in *Byrne* claimed that she was treated discriminatorily by her employer because she had cooperated with an EEOC investigation of wage disparity at her workplace. *Id.* at 212. Following *Roemer* and *Bent*, we held that because a claim under the FLSA's antidiscrimination provision[7], as well as a claim under New

---

**5.** As in *Roemer*, *Threlkeld* dealt with a taxpayer's recovery as a result of a defamation suit. However, as appears clear from the portion of the opinion quoted above, the new approach of the Tax Court was meant to have a more general applicability. *See Metzger v. Commissioner*, 88 T.C. 834 (1987), *aff'd without published opinion*, 845 F.2d 1013 (3d Cir.1988) (following *Threlkeld* and holding that even though taxpayer sought an award of back pay under Title VII, sex discrimination was in the nature of a personal injury and therefore all damages received on account of that injury were excludable under § 104(a)(2)). Nevertheless, we find that the Tax court has not consistently utilized this new approach in certain types of cases, including those where the underlying action arises under the ADEA. *See, e.g., Pistillo v. Commissioner*, 57 T.C.M. (CCH) 874 (1989); *Wirtz v. Commissioner*, 56 T.C.M. (CCH) 1596 (1989). For example, in *Pistillo*, a decision by a single judge of the Tax Court held that back pay under the ADEA was taxable income. The judge attempted to limit the full Tax Court's holding in *Threlkeld* to the proposition that "tort damages, even when formulated in terms of lost wages, are nonetheless excludable if lost wages are merely an evidentiary measure of loss used to determine the amount of the taxpayer's actual damage, rather than an independent basis for recovery." *Pistillo*, 57 T.C.M. at 880. Even if we agreed with the *Pistillo* Court's characterization of the full Tax Court's holding in *Threlkeld*, it does not survive

our holding in *Byrne v. Commissioner*, 883 F.2d 211 (3d Cir.1989). *See also Wulf v. City of Wichita*, 883 F.2d 842, 872 (10th Cir.1989).

**6.** After *Bent* was decided, the Court of Appeals for the Sixth Circuit affirmed the previously discussed Tax Court decision in *Threlkeld*:

We agree with the Ninth and the Third Circuits that the nonpersonal consequences of a personal injury, such as a loss of future income, are often the most persuasive means of proving the extent of the injury that was suffered, and that the personal nature of an injury should not be defined by its effect. Injury to a person's hand or arm is a personal injury. This is so even though it may affect a person's professional pursuits. All income in compensation of that injury is excludable under section 104(a)(2). Similarly, the injury to taxpayer's reputation in this case was a personal injury. This is so even though it affected his professional pursuits. All income in compensation of that injury is excludable under section 104(a)(2).

*Threlkeld v. Commissioner*, 848 F.2d 81, 84 (6th Cir.1988).

**7.** Section 15(a)(3) of the FLSA states that it shall be unlawful for any person

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or institut-

Jersey's wrongful discharge laws, was the assertion of a personal injury, tort or tort type right, rather than an economic right arising out of a contract, the taxpayer's entire settlement award was excludable from gross income. Therefore, we rejected

> the Commissioner's argument ... that the settlement is taxable because it was intended, at least in part, to compensate [the taxpayer] for lost wages due to her wrongful firing. The relevant inquiry, as the Tax Court noted, is whether the settlement was received on account of personal or non-personal injuries, not whether the damages compensate the taxpayer for economic losses. To the extent that the Commissioner argues that because the settlement was intended to compensate [the taxpayer] for economic losses it is therefore compensating her for non-personal injuries, we find this argument to have been explicitly rejected in *Bent*, and we reject it again here.

*Id.* at 214.

We are asked now to extend *Byrne* to a different type of discrimination claim, i.e. age discrimination. The Tax Court in the instant case concluded that half of the taxpayer's settlement was taxable income and that half was excludable under § 104(a)(2). In its opinion, the Tax Court found that the taxpayer's ADEA suit consisted of claims for both wage-related damages and liquidated damages. *Rickel v. Commissioner*, 92 T.C. 510, 522 (1989). Noting that the amount of liquidated damages recoverable in an ADEA suit must be based upon the amount of back pay awarded, the Court allocated half of the settlement to each type of damage claim. *Id.* The Court then held that "damages in lieu of wages are in the nature of a breach of contract action," *id.* at 521, while "liquidated damages are intended as compensation for a tort or tort-like injury," *id.* Therefore, only the latter damages were excludable from gross income under section 104(a)(2).[8]

The taxpayer argues that the Tax Court erred in finding that the taxpayer's ADEA action consisted of one-half personal injury, tort type claims and one-half non-personal injury, contract type claims. He argues that under our decision in *Byrne* the entire settlement amount should be excludable as compensation for a personal injury. We agree and find that the Tax Court failed to properly apply the analysis adopted by this Court—and, indeed, the analysis the full Tax Court itself has adopted in *Threlkeld*—to determine whether settlement proceeds are excludable from gross income under § 104(a)(2).

We note that the Tax Court correctly stated the approach to be applied, under *Threlkeld*, to resolve a § 104(a)(2) problem: "[t]o determine whether the damages received were paid on account of personal injuries ... we must look to the nature of the claim and not to the consequences that result from the injury." *Id.* at 516. The Tax Court at one point even characterized correctly the nature of the taxpayer's age discrimination claim as the assertion of a personal injury, tort type right. *Id.* at 522.

However, the Tax Court then slipped into the old analysis previously abandoned by the full Tax Court in *Threlkeld*, i.e., "mount[ing] an inquiry to determine whether the components of the [taxpayer's discrimination] injuries for which the [settlement was] made are personal or [economic]." *Threlkeld*, 87 T.C. at 1300. Instead, once it found that age discrimination was analogous to a personal injury and that the taxpayer's ADEA action amounted to the assertion of a tort type right, the Tax Court should have ended its analysis and found that all damages flowing therefrom were excludable under § 104(a)(2). *See id.* at 1299 (the determination of whether the damages were paid on account of a personal injury is "the beginning and the end of the inquiry"). By going further and rum-

---

ed or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee; ...
29 U.S.C. § 215(a)(3) (1982).

**8.** The Tax Court rejected the Commissioner's argument that liquidated damages under the ADEA should be treated as punitive damages. *Id.* at 521. The Commissioner has not appealed this decision.

maging through the taxpayer's prayers for relief in order to determine the nature of his claim, the Tax Court was simply defining the nature of the taxpayer's injury by reference to its nonpersonal consequences, an approach we explicitly rejected in both *Bent* and *Byrne*, and the full Tax Court rejected in *Threlkeld*. As in *Byrne*, the nonpersonal, economic effects of the employer's act of discrimination, e.g., loss of wages, does not transform a personal tort type claim into one for nonpersonal injuries. *Byrne*, 883 F.2d at 214.[9] *See also Roemer*, 716 F.2d at 699.

Furthermore, we are confident that the Tax court correctly characterized age discrimination as more analogous to a personal injury tort than a breach of contract claim. We characterized the taxpayer's action in *Byrne*, under the FLSA's antidiscrimination provision, as asserting a personal injury, tort type right because:

> such a suit alleges the violation of a duty owed the plaintiff by the defendant employer which arises by operation of the Act. This duty is independent of any duty an employer might owe his employee pursuant to an express or implied employment contract; it arises by operation of law. Thus, the statutory claim seeks to remedy a statutory violation that the law has defined as wrongful.

*Byrne*, 883 F.2d at 215.[10] We believe that a similar analysis applies to a claim of age discrimination under the ADEA.

Like the antidiscrimination provision of the FLSA, the duty of an employer to refrain from discriminating against employees on the basis of their age arises by operation of a statute. Society has made the moral and economic determination that as a matter of law it will not abide such discrimination. Such a duty arises even in the absence of a written employment contract and despite the existence of either contrary terms in such a contract or conflicting common law employment-at-will principles.[11]

Moreover, we do not believe that the ADEA, and federal employment discrimination statutes in general, are usefully viewed as a Congressional attempt to rewrite the terms of employment contracts. For one thing, nothing in the statutes suggests or hints at such an intention. *Cf.* 42 U.S.C. § 2000e–2 (1982) (speaking in terms of "unlawful employment practices for an employer"). But more importantly the scope of these statutes goes beyond the mere employer-employee context, protecting individuals from various forms of discrimination even if they are not yet in a contractual relationship, e.g., refusal to hire contexts. *See, e.g.*, 29 U.S.C. § 623(a) (1982); 42 U.S.C. § 2000e–2(a) (1982).[12]

We are strengthened in our conclusion by courts in other jurisdictions that have characterized an action to redress discrimination in the workplace as a tort claim for personal injuries whether the discrimination was based on race, *see Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (describing § 1981 of the Civil Rights laws as "part of a federal law barring racial discrimination, which, as the Court of Appeals [for

---

**9.** Thus, to the extent that the Commissioner, in spending an inordinately large part of his brief attempting to establish that at least half of the settlement comprised payment for back pay, is arguing that "because the settlement was intended to compensate [the taxpayer] for economic losses it is therefore compensating [him] for non-personal injuries, we find this argument to have been rejected in *Bent* [and *Byrne*] and we reject it again here" for the *third* time. *Byrne*, 883 F.2d at 214.

**10.** Moreover, we also held in *Byrne* that a discharge in violation of a clear mandate of public policy in New Jersey, i.e., against discrimination, involves the assertion of a claim for damages for injury of a personal nature, for pur-

poses of the IRC, rather than for economic loss. *Id.* at 216.

**11.** Likewise, the ADEA, in adopting from the FLSA the very same remedial provisions that were at issue in *Byrne*, provides in some cases for liquidated damages in an amount equal to the plaintiff's demonstrable compensatory damages, supporting the conclusion that the statutory remedy for age discrimination exists to redress an act that the law defines as "wrongful." *See Byrne*, 883 F.2d at 215 n. 3.

**12.** In addition, we can find no good reason to hold that the provisions of the ADEA are implied contractual terms, while holding that the provisions of the FLSA are not.

the Third Circuit] said, is a fundamental injury to the individual rights of a person"); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 n. 10 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 315, 50 L.Ed.2d 286 (1976), sex, *see Thompson v. Commissioner*, 866 F.2d 709, 712 (4th Cir.1989); *E.E.O.C. v. Vucitech*, 842 F.2d 936, 944 (7th Cir.1988); *Metzger v. Commissioner*, 88 T.C. 834, 851–52 (1987), *aff'd without opinion*, 845 F.2d 1013 (3d Cir.1988), or age, *see Jay v. International Salt Co.*, 868 F.2d 179, 180 (5th Cir.1989). *Cf. Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (analogizing a violation of the Civil Rights Acts of 1871 to a violation of the fourteenth amendment which "is an injury to the individual rights of the person"); *Dillon v. AFBIC Development Corp.*, 597 F.2d 556, 562 (5th Cir. 1979) ("An action based upon the federal antidiscrimination statutes is essentially an action in tort") (suit brought under the Fair Housing Act and the Civil Rights Act of 1866); *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1143 (4th Cir.1975) ("an action brought under statutes forbidding racial discrimination is fundamentally for the redress of a tort") (suit brought under various sections of the Civil Rights Acts of 1866 and 1964). Indeed, in dictum, the Supreme Court has analogized an action to redress discrimination, at least in the context of race, to defamation or intentional infliction of emotional distress claims. *Curtis v. Loether*, 415 U.S. 189, 195 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974) (explaining that the "contours of the [intentional infliction] tort are still developing, and it has been suggested that 'under the logic of the common law development of a law of insult and indignity, racial discrimination might be treated as a dignitary tort.' C. Gregory & H. Kalven, *Cases and Materials on Torts* 961 (2d ed. 1969)").[13]

Thus, focusing on the nature of the claim, we are convinced that the taxpayer's discrimination suit under the ADEA was analogous to the assertion of a tort type right to redress a personal injury. By discriminating against the taxpayer on the basis of his age, Malsbary invaded the rights that the taxpayer "is granted by virtue of being a person in the sight of the law." *Threlkeld*, 87 T.C. at 1308. The taxpayer merely sought the remedies afforded by the statute as compensation for the personal injury he suffered as a result of his employer's act of discrimination; the requested remedies were not separate claims in themselves to redress the employer's breach of a contract.[14] The nonpersonal consequences of the discrimination, e.g., the loss of wages, does not transform discrimination into a nonpersonal injury. Therefore, despite the contrary tax liability assumptions that some courts, including this one, have made in reviewing judgments obtained for ADEA violations, *see, e.g., Gelof v. Papineau*, 829 F.2d 452, 455–56 (3d Cir.1987); *Blim v. Western Elec. Co.*, 731 F.2d 1473, 1480 (10th Cir.), *cert.*

---

**13.** We do not believe that *Rogers v. Exxon Research & Eng'g Co.*, 550 F.2d 834 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), compels a different conclusion. First, the *Rogers* court was characterizing an ADEA action for purposes of determining whether an ADEA plaintiff had the right to a jury trial under the Act, not for tax purposes. *Id.* at 838–39. Second, the conclusion by the *Rogers* court that an ADEA action is a "routine contract action" was gratuitous given that the holding was simply that an ADEA action involves rights and remedies of the sort typically enforced in an action at law. *Id.* And, third, we do not hold today that there are no elements in an ADEA action that do not possess contract type features, only that age discrimination, for purposes of § 104(a)(2) of the IRC, is a personal injury and an ADEA action to redress that injury is more like the assertion of a tort type right.

**14.** As Justice O'Connor explained in the analogous context of a Title VII action:

Like the common law of torts, the statutory employment "tort" created by Title VII has two basic purposes. The first is to deter conduct which has been identified as contrary to public policy and harmful to society as a whole.... The second goal of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination."

*Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 1798, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring in the judgment) (quoting from *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975)).

*denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984)[15], we hold that just as in the case of a physical personal injury, all the damages received by the taxpayer on account of age discrimination are excludable under § 104(a)(2).

We find some additional support for this view in the legislative history of Congress' recent amendment to § 104(a)(2) in the 1989 Omnibus Budget Reconciliation Act, 103 Stat. 2379 (1989), which added the provision that: "Paragraph (2) shall not apply to any punitive damages in connection with a case not including physical injury or physical sickness." This action is significant to our analysis because the original bill introduced in the House of Representatives would have limited the § 104(a)(2) exclusion to cases involving physical injury or physical sickness. As the House Ways and Means Committee explained the bill, "some courts have held that the exclusion applies to damages in cases involving employment discrimination," but that the "committee believes that such treatment is inappropriate where no physical injury or sickness is involved." H.R.Rep. No. 247, 101st Cong., 1st Sess. 1354–55, *reprinted in,* 1990 U.S. Code Cong. & Admin.News 2824–25. The Senate bill contained no such amendment to § 104(a)(2). In its final conference bill, Congress chose to implicitly endorse the courts' expansive interpretation of § 104(a)(2) to encompass nonphysical injuries and merely circumscribe the scope of the exemption as to only one type of remedy, i.e., punitive damages, and not other types of remedies typically available in employment discrimination cases, such as back pay. H.R.Conf.Rep. No. 386, 101st Cong., 1st Sess. 622–23, *reprinted in,* 1990 U.S.Code Cong. & Admin.News 3225–26. *Cf. Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (citing cases).

Of course, it might be troubling to some that a successful plaintiff in an ADEA suit will make out better, vis-a-vis federal income tax liability, than if the plaintiff had not been discriminated against in the first place. Although this concern is understandable, we note that we are simply following the Treasury regulation that injects into the analysis tort and contract concepts. Moreover, the successful ADEA plaintiff is being treated no better (or worse now) than the typical tort victim who suffers a physical injury. *See supra* p. 658. We see no reason to treat one personal injury victim any differently than another. *See Miller v. Commissioner,* 93 T.C. 330, 337 (1989) (full Tax Court in a 9–1 decision) ("Section 104 does not distinguish between physical and nonphysical injuries, and we see no sound reason to construe the statute in such a way as to not afford the same tax treatment to recoveries for all types of 'personal' injury regardless of consequence.") (citation omitted).[16]

**15.** Similarly, in fashioning an appropriate award under Title VII, some courts have decided that back pay is taxable income. *See, e.g., Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1579–80 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Sears v. Atchison, Topeka & Santa Fe Ry.,* 749 F.2d 1451, 1456–57 (10th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Melani v. Board of Higher Educ.,* 652 F.Supp. 43, 48 (S.D.N.Y.1986), *aff'd without a published opinion,* 814 F.2d 653 (2nd Cir.1987).

**16.** Contrary to the Commissioner's view, we do not believe that the holding in *Thompson v. Commissioner,* 866 F.2d 709 (4th Cir.1989), is inconsistent either with *Byrne* or our decision in this case. In *Thompson,* the plaintiff sued her employer under the Equal Pay Act and Title VII, claiming that she was not being paid the same amount as male employees performing the same job duties. *Id.* at 710–12. The plaintiff prevailed after a bench trial. *Id.* at 711–12. The appellate court found that the plaintiff's claim was essentially a quasi-contractual one, seeking restitution for the value of the services already performed. *Id.* at 712. But, instead of rejecting the analysis adopted in *Roemer, Bent,* and *Threlkeld,* the court cited those cases *approvingly* and attempted to distinguish the case before it: "The back pay award was simply recovery for earned, but unpaid, wages which distinguishes her award of back pay from awards for lost wages or lost income in traditional personal injury/tort actions. She received compensation for services rendered whereas a tort plaintiff receives compensation for the inability to earn an income due to the tortious action of a defendant." *Id. Cf. Bow-*

### III.

The taxpayer in this case also argues that should we reverse the Tax Court and hold that the entire settlement is excludable from gross income under § 104(a)(2), we should also reconsider the Tax Court's decision not to award the taxpayer reasonable litigation expenses under the Internal Revenue Code of 1986, 26 U.S.C. § 7430. Since we have reversed the Tax Court we have also considered this additional issue. However, we do not believe the taxpayer is entitled to expenses under the IRC.

In order to recover reasonable litigation expenses under § 7430, the taxpayer must establish that he was the "prevailing party." 26 U.S.C. § 7430(a). The statutory definition of "prevailing party" is a party who both (1) "establishes that the position of the United States in the civil proceeding was not substantially justified," 26 U.S.C. § 7430(c)(2)(A)(i) [17], and (2) "has substantially prevailed with respect to the amount in controversy" or "has substantially prevailed with respect to the most significant issue or set of issues presented," 26 U.S.C. § 7430(c)(2)(A)(ii)(I), (II). We do not believe that the taxpayer has established requirement (1).

The Commissioner's principal position throughout these proceedings has been that one-half of the settlement figure was for back pay and one-half was for liquidated damages, and that both types of damages were taxable. The Commissioner argued that back pay was taxable income because it was paid on account of a nonpersonal injury. Although we have rejected

that argument here, given that the Commissioner prevailed in the Tax Court on the issue, that *Byrne* had not yet been decided by this Court, the inconsistency we have found in the Tax Court's approach to this issue, *see supra* n. 5, and the assumption by many courts that such back pay awards are taxable, *see supra* note 15 and accompanying text, we think that the Commissioner's position could be deemed as reasonably supported in the case law. *See, e.g., Smith v. United States*, 850 F.2d 242, 246 (5th Cir.1988) (requiring taxpayer to prove that the government's position was unjustified); *Boatmen's First Nat'l Bank of Kansas City v. United States*, 723 F.Supp. 163, 170 (W.D.Mo.1989); *Feldmar v. Commissioner*, 56 T.C.M. (CCH) 1414, 1416 (1989) ("In determining whether [the government's] position was not substantially justified, the question is one of whether [the government's] position in the litigation was unreasonable."). *Cf. Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (interpreting the phrase "substantially justified" for purposes of the closely related Equal Access to Justice Act to mean justified to a degree that would satisfy a reasonable person). *See generally Giesecke v. United States*, 637 F.Supp. 309, 310–12 (W.D.Tex.1986) (no difference between "substantially justified" test under EAJA and "unreasonableness" standard under the IRC of 1954); *Kaufman v. Egger*, 584 F.Supp. 872, 877 n. 1 (D.Me.1984), *aff'd*, 758 F.2d 1 (1st Cir. 1985) (same).

We believe that the Commissioner's position that the portion of the settlement it

---

*man v. United States*, 824 F.2d 528, 529–30 (6th Cir.1987) (employee who prevailed in a discrimination suit alleging wage disparity could allocate FICA tax to years in which backpay was earned). Neither in *Byrne* nor the instant case had the taxpayer performed uncompensated services for the employer after the challenged discrimination. On the contrary, both taxpayers were seeking compensation for *their inability to earn an income* due to the tortious action of their employers. Thus, our decision today does not conflict with *Thompson*. Of course, we do not decide whether we would adopt the reasoning of *Thompson* given a similar factual scenario.

**17.** Prior to the 1986 amendments, the IRC required a plaintiff to show that the government's position was "unreasonable" in order to be considered a "prevailing party." "The change [of language from 'unreasonable' to 'not substantially justified'] apparently came about as part of an unsuccessful effort by the Senate Finance Committee to make section 7430 conform to the prevailing interpretation of the Equal Access to Justice Act ... by requiring the government to prove that its position *was* substantially justified." *Smith v. United States*, 850 F.2d 242, 245 n. 8 (5th Cir.1988) (emphasis in the original). *See* H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–799–II–802, 1986 U.S.Code Cong. & Admin. News 4887–90.

viewed as liquidated damages was taxable is more problematic. The Commissioner argued that under the ADEA liquidated damages are punitive and, as such, are taxable income under § 61, citing *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Although the Tax Court ultimately rejected this argument,[18] for purposes of § 7430 the Court found the Commissioner's position was "substantially justified." App. at 508. *See Phillips v. Commissioner*, 851 F.2d 1492, 1499 (D.C.Cir.1988) (whether the government's position is substantially justified must be determined by all the facts and circumstances and simply because the government lost in the Tax Court should not be dispositive). We do not believe that the Court abused its discretion in so finding. *See Zinniel v. Commissioner*, 883 F.2d 1350, 1354–55 (7th Cir.1989); *Berks v. United States*, 825 F.2d 1262, 1263 (8th Cir.1987). *Cf. Underwood*, 108 S.Ct. at 2546–49 (deciding that the abuse of discretion standard of review should be applied to the district court's determination of substantially justified under EAJA).

Unlike the FLSA, liquidated damages are not generally available to plaintiffs under the ADEA. To recover such, the plaintiff must establish that the employer willfully violated the Act. 29 U.S.C. § 626(b) (1982). In discussing the statute's willfulness standard, the Supreme Court has noted that the "legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Since the plaintiff's recovery of liquidated damages is not based on the extent of the taxpayer's injury but instead the employer's degree of culpability, the Court's interpretation of the legislative his-

tory seems to comport with the statute's structure. Furthermore, at least one court has characterized liquidated damages under the ADEA as punitive. *Kelly v. American Standard, Inc.*, 640 F.2d 974, 979 (9th Cir.1981). *Cf. Dreyer v. ARCO Chem. Co.*, 801 F.2d 651, 657–58 (3d Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987) (looking to general punitive damage principles to determine the meaning of "willfulness" in the context of disparate treatment in a discrete employment situation).

Moreover, it was not unreasonable for the Commissioner to have interpreted *Glenshaw Glass* as standing for the proposition that all punitive damage awards are includable in gross income. Although the court in *Glenshaw Glass* was apparently considering only whether treble damages under the antitrust laws were taxable under the IRC, its language was much broader: "Damages for personal injury are by definition compensatory only. Punitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes." *Glenshaw Glass*, 348 U.S. at 432 n. 8, 75 S.Ct. at 477 n. 8. Both courts and commentators have generally interpreted *Glenshaw Glass* as having enunciated the broader proposition. *See, e.g., Thomson v. Commissioner*, 406 F.2d 1006, 1008 (9th Cir.1969); Frolik, *supra* p. 658, at 17–18.[19]

Thus, we hold that the Commissioner's position that back pay and liquidated damages under the ADEA represent taxable income was substantially justified. Therefore, we will affirm the Tax Court's decision to deny the taxpayer's application for reasonable litigation expenses.

## IV.

To summarize, we disagree with the Tax Court that half of the taxpayer's settle-

---

**18.** We re-emphasize that the Commissioner has not appealed this decision so all we are deciding here is whether the Commissioner's position was substantially justified, not its validity.

**19.** It is true that in September of 1989, the Tax Court decided that punitive damages were excludable under 104(a)(2) if received on account of personal injuries. *Miller v. Commissioner*, 93

T.C. 330 (1989). However, *Miller* was decided after our case. In addition, there was a strong dissent in *Miller* suggesting, at least, the reasonableness of the Commissioner's position in this case.

We note also that Congress has now amended § 104(a)(2), limiting the holding of *Miller* to punitive damages recovered on account of *physical* personal injuries. *See supra* pp. 663–64.

ment is taxable income. Because age discrimination is analogous to a personal injury tort, all damages caused by that injury are excludable under § 104(a)(2). However we do agree with the Tax Court that the taxpayer is not entitled to reasonable litigation expenses since the Commissioner's position that the entire settlement amount represented taxable income was substantially justified. Costs taxed against the appellee.