CARMEN PISTILLO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pistillo v. Commissioner
Docket No. 2643-87
United States Tax Court
T.C. Memo 1989-329; 1989 Tax Ct. Memo LEXIS 329; 57 T.C.M. (CCH) 874; 50 Fair Empl. Prac. Cas. (BNA) 489; T.C.M. (RIA) 89329; 51 Empl. Prac. Dec. (CCH) P39,402; July 11, 1989; As corrected July 28, 1989 Thomas I. Hausman and Timothy J. O'Shaughnessy, for the petitioner. Richard S. Bloom for the respondent. WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined a deficiency of $ 22,131.90 in petitioner's 1982 Federal income *330 tax. The issue for decision is whether any portion of a payment received by petitioner in settlement of his age discrimination suit against his former employer is excludable from income under section 104(a)(2)[1] as compensation for personal injuries. FINDINGS OF FACT The parties have stipulated some of the facts which are so found. We incorporate the stipulation of facts and associated exhibits in our findings by this reference. Petitioner resided in Solon, Ohio when he filed his petition. Petitioner was employed by Cleveland Tool & Supply Company ("Cleveland Tool") as a commission salesman for approximately ten years. On April 6, 1979, Cleveland Tool terminated petitioner's employment and replaced him with a younger person. Petitioner was approximately 57 years old at the time of his discharge. Since then, he has remained unemployed. Petitioner felt that he was a victim of age discrimination. Accordingly, on July 7, 1979, as a procedural *331 prerequisite to perfecting a claim under the Age Discrimination in Employment Act of 1967 ("the ADEA"), Pub. L. 90-202, 81 Stat. 602 (codified as amended at 29 U.S.C. secs. 621-634 (1976)), petitioner filed a timely notice of his intent to sue Cleveland Tool on the grounds of age discrimination with the Wage and Hour Division of the United States Department of Labor, as prescribed by section 7(d) of the ADEA, 29 U.S.C. sec. 626(d). [2] On June 5, 1980, the Equal Employment Opportunity Commission (the "E.E.O.C.") notified petitioner that its efforts to resolve his dispute with Cleveland Tool through informal methods of conciliation, conference and persuasion, as required by section 7(d) of the ADEA, 29 U.S.C. section 626(d), had been unsuccessful. The E.E.O.C. also advised petitioner of his right to institute an independent civil action against Cleveland Tool pursuant to section 7(c) of the ADEA, 29 U.S.C. section 626(c). [3]
*332 In October, 1980, petitioner pursued his age discrimination claim by filing a complaint, Civil Action No. C80-1941, against Cleveland Tool in the United States District Court for the Northern District of Ohio ("the age discrimination suit"). The gravamen of petitioner's complaint was discriminatory discharge based on age, as prohibited by section 4(a) of the ADEA, 29 U.S.C. section 623(a). [4]
*333 Petitioner alleged that the "reason for the termination of his employment was his age, in violation of 29 USC Section 621 et seq., and the Fifth and Fourteenth Amendments to the United States Constitution." The complaint stated: This is a suit in equity and at law authorized and instituted in part pursuant to the Age Discrimination in Employment Act of 1967, 29 USC Section 621 et seq., providing for judgments compelling employment reinstatement and promotion, enforcing liability for unpaid wages or overtime compensation, or granting other appropriate relief against discrimination in employment on the basis of age. This suit is also authorized pursuant to Title 42 Sections 1981 and 1988, and the Fifth and Fourteenth Amendments to the United States Constitution. 2. This is also a suit in equity and at law seeking an order compelling specific performances [sic] of the implied contract of employment between plaintiff and defendant, and money damages for breach of the terms thereof. The complaint contained several other references to the ADEA and alleged that petitioner had complied with the procedural prerequisites to filing *334 a suit under the ADEA as described above. Petitioner sought the following relief in his complaint: (1) an order requiring Cleveland Tool "to reinstate plaintiff to the position he held on April 6, 1979 * * * [and] to make the plaintiff whole by reinstating plaintiff to entitlement of company benefits, * * * and by paying plaintiff all wages, including overtime, which would have been received by plaintiff in the normal course of his employment for [sic] April 6, 1979, until the date of reinstatement;" (2) a declaratory judgment that Cleveland Tool had violated the ADEA; (3) attorney's fees and costs; and (4) injunctive and other equitable relief, if necessary. The age discrimination suit was tried before a jury in March, 1981, with the Honorable John M. Manos, Judge, presiding. When the trial concluded, petitioner asked the court to instruct the jury to award "damages, or back pay[,]" if Cleveland Tool violated the ADEA. Petitioner asked that "back pay" be measured by the lost commissions which he would have earned had he not been discriminatorily discharged. The court instructed the jury on the issue of petitioner's damages as follows: If the jury finds the defendant *335 liable for age discrimination in employment, then you may go on to consider the amount of damages, if any, that will compensate the plaintiff for the defendant's violation of the Age Discrimination in Employment Act. The jury may award compensation for back pay in the amount of commissions, if any, that the plaintiff did not receive because of his discharge and would otherwise have been received by him but for his discharge. In addition to these damages, the court also instructed the jury to award an equal amount of liquidated damages if it found that Cleveland Tool had willfully violated the ADEA: If the jury decides to award compensatory damages to the plaintiff, then you may go on to consider whether to award liquidated damages. Title 29, Section 626, of the Age Discrimination in Employment Act provides that if the jury finds by a preponderance of the evidence that the defendant willfully violated the Act, then it shall award additional, liquidated damages in an amount equal to the amount awarded for compensatory damages. The court directed the jury to not consider income taxes in fixing the amount of petitioner's damages because "an award of damages to the plaintiff, *336 if any, is not subject to any income taxes." The jury returned a verdict of $ 55,000.00 for petitioner. On its verdict return form, the jury specified that this amount constituted "compensatory damages," and declined to award him any "liquidated damages." The court entered a judgment of $ 55,000.00 for petitioner, and awarded him attorneys' fees of $ 22,432.83. Neither the court nor the jury addressed petitioner's claim for reinstatement. Cleveland Tool appealed the court's judgment and award of attorneys' fees to the United States Court for Appeals for the Sixth Circuit on January 13, 1982. While the appeal was pending, the president of Cleveland Tool, Mr. Karl F. Hauserman, initiated settlement discussions with petitioner. Through Mr. Hauserman, Cleveland Tool offered to withdraw its appeal if petitioner would accept a lump-sum cash payment of $ 40,000.00 and withdraw his claim for reinstatement. Petitioner rejected the offer. Mr. Hauserman later proposed a second settlement offer of $ 58,000.00, again conditioned on petitioner withdrawing his claim for reinstatement. This time, petitioner accepted the offer. On April 30, 1982, the parties settled the age discrimination *337 suit by executing a document entitled "Release and Settlement" ("the Settlement"). Under the terms of the Settlement, Cleveland Tool promised to withdraw its appeal and pay petitioner $ 81,562.58 ("the gross settlement proceeds"), consisting of: (1) a cash payment to petitioner of $ 58,000.00; (2) reimbursement of $ 22,706.18 expended for his attorneys' fees; and (3) reimbursement of $ 856.40 expended for court reporter's fees. In exchange, petitioner agreed to: release and discharge Cleveland Tool, including all of its affiliates, subsidiaries, predecessors, successors, assigns, directors, officers, employees and agents, and each of them, from any and all judgments, claims, demands, actions, causes of action, wages, damages, costs, claims of reinstatement, claims of interest, awards of attorneys' fees, expenses and compensation or suits of law or equity of whatsoever kind or nature, which he or his heirs or his personal representatives may now or hereafter have or assert against Cleveland Tool, including all of its affiliates, subsidiaries, predecessors, successors, assigns, directors, officers, employees and agents, and each of them, growing out of or resulting from his employment *338 at Cleveland Tool, whether now existing or hereafter developing, and whether now known or unknown, including, but not limited to, any claims he had asserted or judgments he had been awarded in Case No. C80-1941, United States District Court for the Northern District of Ohio, Eastern Division, entitled "Carmen Pistillo, Plaintiff, v. Cleveland Tool & Supply Co., Defendant." Petitioner acknowledged that this payment was: in full settlement and satisfaction of all claims or demands whatsoever, including the judgment awarded to him in Case No. C80-1941 in the United States District Court for the Northern District of Ohio, Eastern Division, for money damages and for attorneys' fees, including interest on that judgment, and including his claim in that Case No. C80-1941 for reinstatement to his former position at Cleveland Tool. The Settlement did not specifically characterize the $ 58,000.00 paid to petitioner as compensation for either back pay or personal injury. Cleveland Tool did not withhold any Federal taxes on the gross settlement proceeds, issue petitioner a Form W-2, or report the proceeds as wages to the Social Security Administration. Petitioner filed his 1982 Federal *339 income tax return with the Cincinnati Service Center. He failed to report any part of the gross settlement proceeds as income on the return, but he deducted on Form 2106, Employee Business Expenses, $ 850.00 of the amount paid as court reporter's fees. In his statutory notice, respondent determined a tax deficiency of $ 22,131.90 on the ground that petitioner should have included in income the $ 58,000.00 paid to him under the terms of the Settlement because it constituted compensation for "lost wages and job reinstatement, rather than personal injury." The $ 58,000.00 represented petitioner's net settlement proceeds after payment of attorneys' fees and court reporter's fees. With petitioner's consent, respondent amended his answer at the time of trial to assert an increased tax deficiency of $ 22,508.33. The increased deficiency is based on respondent's increasing the amount included in income to $ 58,000.00 on the ground that petitioner deducted $ 850.00 for court reporter's fees without including a corresponding portion of the gross settlement proceeds in income. OPINION Respondent contends that the $ 58,000.00 in net settlement proceeds constitutes compensation for reinstatement *340 and back wages, and is includable in gross income under section 61(a). Actually, respondent maintains that the entire gross settlement proceeds of $ 81,526.58 are includable in income, but concedes that petitioner is allowed deductions under section 212 for the amounts paid as attorney's fees, $ 22,706.18, and court reporter's fees, $ 856.40, so that in this case the result is the same. Because petitioner deducted $ 850.00 of the amount paid to the court reporter without including it in income, respondent asserts an increase of $ 58,850.00 in petitioner's gross income for 1982. Petitioner contends the settlement payment is compensation for personal injury within the meaning of section 104(a)(2) and is therefore excludable from income. We agree with respondent.
Gross income includes "all income from whatever source derived," unless otherwise provided. Section 61(a). A statutory exemption providing otherwise must specifically exclude the item of income in question, Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955), and must be given a narrow construction, *341 Commissioner v. Jacobson, 336 U.S. 28, 49 (1949). Section 104(a)(2), as in effect during the year in issue, excludes from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." Neither the Code nor its legislative history [5] defines the phrase "on account of personal injuries." Seay v. Commissioner, 58 T.C. 32, 36 (1972). Section 1.104-1(c), Income Tax Regs., however, provides the following general guidance: the term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution. *342 As a prerequisite for exclusion under section 104(a)(2), the damages involved must be derived from some sort of tort (or tort-type) claim against the payor. Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). Exclusion under section 104(a)(2) is appropriate "if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law." Threlkeld v. Commissioner, 87 T.C. 1294, 1308 (1986), affd. 848 F.2d 81 (6th Cir. 1988). Section 104 does not apply to damages arising from breach of an employment contract, as distinguished from damages arising from a tort-type claim; the former are in the nature of compensation or otherwise in lieu of income, and are generally includable in income under section 61(a). Hodge v. Commissioner, 64 T.C. 616 (1975); Henry v. Commissioner,62 T.C. 605 (1974); *343 State Fish Corp. v. Commissioner, 48 T.C. 465, 472 (1967), modified by 49 T.C. 13 (1967). Payments for the termination of an employment contract are not payments for personal injuries. Knuckles v. Commissioner, 349 F.2d 610, 611-612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Glynn v. Commissioner, supra at 119-120. Lost wages and back pay therefore normally constitute an item of income. Hodge v. Commissioner, supra at 619. However, damages for personal injury may be formulated in terms of lost wages or back pay, as a means of proving the extent of the injury suffered, but are nevertheless eligible for exclusion under section 104(a)(2). Metzger v. Commissioner, 88 T.C. 834, 857 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Threlkeld v. Commissioner, supra at 1299; Bent v. Commissioner, 87 T.C. 236, 250-251 (1986), affd. 835 F.2d 67 (3d Cir. 1987). To determine whether a payment *344 to settle a lawsuit qualifies for exclusion under section 104(a)(2), we must examine the nature, origin and character of the claim or cause of action which formed the actual basis for the settlement, rather than the claim's validity. Byrne v. Commissioner, 90 T.C. 1000, 1007 (1988); Metzger v. Commissioner, supra at 847; Threlkeld v. Commissioner, supra at 1297; Bent v. Commissioner, supra at 244; Seay v. Commissioner, 58 T.C. at 37. Stated differently, the relevant inquiry is "in lieu of what were the damages awarded?" Church v. Commissioner, 80 T.C. 1104, 1107 (1983); Yates Industries, Inc. v. Commissioner, 58 T.C. 961, 972 (1972), affd. without published opinion 480 F.2d 920 (3d Cir. 1973). This determination is factual, and petitioner bears the burden of proving that the nature of the claim underlying the payment is tort-like. Threlkeld v. Commissioner, supra at 1305; Agar v. Commissioner, 290 F.2d 283 (2d Cir. 1961), affg. T.C. Memo. 1960-21; Rule 142(a). *345 The most important factor in determining the nature of the claim underlying a settlement payment is whether the associated written settlement agreement contains express language stating that the payment was (or was not) made on account of personal injury. Byrne v. Commissioner, supra at 1007; Metzger v. Commissioner, supra at 847; Bent v. Commissioner, supra at 244; Glynn v. Commissioner, supra at 120. In the absence of such express language, as in the case before us, "the intent of the payor" as to the purpose in making the payment controls the characterization of the claim. Knuckles v. Commissioner, supra at 613; Byrne v. Commissioner, supra at 1007; Metzger v. Commissioner, supra at 847-848; Fono v. Commissioner , 79 T.C. 680, 694 (1982), affd. 749 F.2d 37 (9th Cir. 1984); Glynn v. Commissioner, supra.If the intent of the payor is to compensate the taxpayer for lost earnings, then the settlement payment is includable in the *346 payee/taxpayer's income. Wolfson v. Commissioner, 651 F.2d 1228, 1230 (6th Cir. 1981), affg. on this issue T.C. Memo. 1978-445. Other factors relevant to the characterization of a settlement payment are the allegations contained in the taxpayer's complaint, the evidence presented, and the arguments made in the underlying court proceeding. Metzger v. Commissioner, supra at 848; Threlkeld v. Commissioner, supra at 1306; Bent v. Commissioner, supra at 245; Church v. Commissioner, supra at 1107. With the foregoing discussion in mind, we examine below each of the five grounds for petitioner's contention that the settlement payment is excludable under section 104(a)(2). First, petitioner contends that the Settlement compromised two types of tort-like claims raised in the age discrimination suit: (1) a statutory claim based on the ADEA, and (2) a constitutional claim based on his civil right to be free from discrimination.
The ADEA prohibits arbitrary discrimination in *347 the work place based on age. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120 (1985). Section 7(b) of the statute entitles persons aggrieved by such discrimination to two types of monetary damages. 29 U.S.C. section 626(b) (1976). [6] The aggrieved is entitled to damages equivalent to his lost wages ("compensatory damages") and, if the discriminating employer willfully violates the ADEA, to liquidated damages in an amount equal to his compensatory damages.
*348 Our recent decision in Rickel v. Commissioner, 92 T.C. 510 (1989), governs the includability of compensatory and liquidated damages awarded pursuant to the ADEA. In Rickel v. Commissioner, we held that the portion of a payment in settlement of ADEA litigation in the nature of compensatory damages is includable in income, and the portion in the nature of liquidated damages is excludable from income under section 104(a)(2). See also Wirtz v. Commissioner, T.C. Memo. 1989-139. In effect, the compensatory damage component is a surrogate for lost compensation owed to the aggrieved as a result of the prohibited discrimination. As such, the compensatory damage component is in the nature of a payment for a contractual violation rather than a tort-type right. Rickel v. Commissioner, supra.See also Thompson v. Commissioner, 89 T.C. 632, 646 (1987), affd. 866 F.2d 709 (4th Cir. 1989). In the case before us, the District Court instructed the jury to award compensatory damages in the form of back pay *349 if it found Cleveland Tool liable for age discrimination, and liquidated damages if it found that the discrimination was willful. Pursuant to these instructions, the jury decided that petitioner was only entitled under the ADEA statute to $ 55,000.00 in "compensatory damages," and so specified on its verdict return form. Because petitioner has not shown otherwise, we conclude that the settlement payment was based on the District Court's judgment for $ 55,000.00 in compensatory damages, and is includable in petitioner's income under Rickel v. Commissioner, supra.
We observe that the net settlement proceeds of $ 58,000.00 exceeded the jury's $ 55,000.00 compensatory damage award by $ 3,000.00. Petitioner has not shown that this $ 3,000.00 surplus was attributable to any form of personal injury. Indeed, this discrepancy may represent the relative value which the parties attached to the avoidance of the nuisance, risk and expense of appellate litigation, or it may represent the value which they attached to petitioner's relinquishing his claim for reinstatement. In any event, as is true with any settlement, one party settles for more than what he believes the *350 disputed claim is worth, the other for less. Otherwise, there would be no incentive to settle the claim in the first place. In addition to the statutory ADEA claim contained in the age discrimination suit, petitioner claims that the Settlement also settled a constitutional age discrimination claim based on his civil right to be free from discrimination. Petitioner refers to the allegation in his complaint that the age discrimination suit was "also authorized pursuant to Title 42 Section 1981 and 1988, and the Fifth and Fourteenth Amendments to the United States Constitution." We agree that in certain cases sums recovered for violations of Federal constitutional rights are excludable damages for personal injuries. Thompson v. Commissioner, supra at 649-650; Metzger v. Commissioner, supra; Bent v. Commissioner, supra.We need not decide whether this is such a case, because even assuming for the sake of argument that petitioner's claim of age discrimination is cognizable under the United States Constitution, the jury was *351 not instructed on this issue, and petitioner has not presented any evidence that this purported constitutional right was an alternative basis for the district court's judgment or was taken into account by Cleveland Tool in settling its appeal from that judgment. Second, petitioner contends that the Settlement also resolved certain potential tort claims which he could have included in the age discrimination suit. Petitioner claims that he suffered emotional distress, mental anguish, pain, suffering, humiliation, defamation, and injury to his business reputation as a result of his discharge from employment. We agree that defamation and emotional distress are tort-like personal injuries, Threlkeld v. Commissioner, supra at 1297-1308, and Church v. Commissioner, supra at 1106-1111, and that the Settlement's terms contained a general release which could possibly include these claims. Petitioner, however, has not shown that these claims actually existed or were contemplated by the parties when negotiating the Settlement. Although the Settlement is formulated as a general release, it specifically refers to only the age discrimination suit. *352 The Settlement provided that petitioner "release[d] * * * Cleveland Tool * * * from any and all * * * claims * * * of whatsoever kind or nature, which he * * * may now or hereafter have or assert against Cleveland Tool * * * growing out of or resulting from his employment at Cleveland Tool, whether now existing or hereafter developing, and whether now known or unknown, including, but not limited to" the age discrimination suit, and that the settlement payment was "in full settlement * * * of all claims or demands whatsoever, including" the age discrimination suit. Because the Settlement is silent as to the purported defamation and emotional distress claims, and because petitioner has not shown otherwise, we have no reason to believe that these claims were ever made known to Cleveland Tool or were intended to be included in the Settlement. Petitioner testified that: (1) he was emotionally affected by his discharge; (2) Mr. Harry Parks, who was Cleveland Tool's president at the time of petitioner's discharge, commented that petitioner had gray hair and lacked the ability to relate to younger people; and (3) he could not find a job due to harm to his reputation in the community *353 resulting from his discharge. Other than his brief self-serving testimony, which we are not required to accept, the record is devoid of any competent evidence to substantiate petitioner's claim that he suffered any personal injury from emotional distress or defamation. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159, cert. denied 404 U.S. 851 (1971); Sharwell v. Commissioner, 419 F.2d 1057, 1060 (6th Cir. 1969), affg. T.C. Memo. 1968-89; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Kean v. Commissioner, 51 T.C. 337 (1968), affd. in part, revd. in part on other grounds 469 F.2d 1183 (9th Cir. 1972). Additionally, petitioner has not produced any evidence indicating that the parties intended to settle anything other than the age discrimination suit enumerated in the Settlement. Petitioner could have obtained testimony from Mr. Hauserman, the other officers of Cleveland Tool, or the attorneys who negotiated the Settlement to reveal whether Cleveland Tool knew of petitioner's defamation and emotional *354 distress claims, whether these claims were discussed during the settlement negotiations, and whether the parties intended to settle these claims. He failed to do so. Because the record contains no reliable evidence of any defamation or emotional distress actually suffered by petitioner, or of any discussion of these allegations during negotiation of the Settlement, we cannot allocate any portion of the settlement payment to petitioner's purported tort injuries. Third, petitioner contends that the back pay on which the district court based its compensatory damage award was an evidentiary factor, or the best measure of loss, for computing the extent of his tort injury, rather than an independent basis for recovery. As a general matter, we agree that tort damages, even when formulated in terms of lost wages, are nonetheless excludable if lost wages are merely an evidentiary measure of loss used to determine the amount of the taxpayer's actual damage, rather than an independent basis for recovery. Metzger v. Commissioner, supra at 857; Threlkeld v. Commissioner *355 , supra at 609; Bent v. Commissioner, supra at 250-251. However, our decision in Rickel v. Commissioner, supra, obviates petitioner's argument here. In that case, we held that back pay, awarded as compensatory damages under the ADEA to redress age-based employment discrimination, is in the nature of a breach of contract action and is not excludable from taxable income. See Wirtz v. Commissioner, supra.
Fourth, petitioner argues that Cleveland Tool's failure to withhold any Federal income or social security taxes from the settlement payment conclusively demonstrates its intent to compensate him for personal injury rather than lost wages. Petitioner relies on McKim v. Commissioner, T.C. Memo. 1980-93, and Nussbaum v. Commissioner, T.C. Memo. 1982-725, as authority for the proposition that whether an employer/payor withholds, or fails to withhold, Federal taxes from a settlement payment is dispositive of its intent to compensate the payee for lost wages, or personal injury, respectively. As petitioner acknowledges on brief, in McKim v. Commissioner, supra, *356 this factor was a "significant, although not dispositive," indicia of the payor's intent. In Nussbaum v. Commissioner, supra, this was but one of four factors which this Court used to determine the character of the claim settled. Although the withholding of Federal taxes from a settlement payment is relevant to the payor's intent, it is not dispositive. See Byrne v. Commissioner, supra at 1010 n.8; Whitehead v. Commissioner, T.C. Memo. 1980-509; Dalbo v. Commissioner, T.C. Memo. 1969-220. We again note that petitioner could have provided us with additional evidence of Cleveland Tool's intent, such as testimony from Mr. Hauserman, the officers of Cleveland Tool, or the attorneys who negotiated the Settlement on its behalf, but failed to do so. We decline to accept Cleveland Tool's failure to withhold Federal taxes as conclusive proof that it intended to compensate petitioner for personal injury. Fifth, petitioner argues that because the District Court, his attorney, and the Internal Revenue Service stated *357 that the settlement payment and the antecedent District Court judgment were not includable in income, the income at issue is not taxable. Such statements, however, do not transmute includable lost wages into excludable damages for personal injury. Without citing any authority, petitioner claims that the District Court's instruction to the jury that it should not consider income taxes in determining its award of damages under the ADEA because those damages were not taxable precludes inclusion of the settlement payment in income. The District Court's declaration is at best dicta, and we are not aware of any judicial doctrine which obligates this Court to follow the pronouncement of a district court on a Federal income tax issue which was not properly before that court, or likewise requires respondent to be bound by a suit to which he was not a party. Petitioner also claims that because his attorney advised him the settlement payment was not taxable, he is entitled to exclude it from income. Generally, it is the taxpayer's duty to file accurate returns, and this duty cannot be avoided *358 by delegating responsibility to an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). Although a taxpayer's reasonable reliance on the advice of tax counsel, if made in good faith and with complete and accurate disclosure, can insulate him from liability for the addition to tax for negligence, Ewing v. Commissioner, 91 T.C. 396, 423 (1988), Freytag v. Commissioner, 89 T.C. 849, 888 (1987), and Daughterty v. Commissioner, 78 T.C. 623, 641 (1982), respondent did not determine the negligence addition in the case before us, and this defense is not relevant to an underlying deficiency. Last, petitioner claims that because he telephoned the Internal Revenue Service, inquired whether the settlement payment was taxable, and was advised that the type of damages at issue was nontaxable, respondent is now bound by this informal advice and is precluded from including the settlement payment in income. Even if we accept petitioner's factual allegations, the statutes, regulations, and judicial decisions are the authoritative *359 sources of Federal tax law, and informational assistance provided to a taxpayer by the Internal Revenue Service is not binding on respondent. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Nor does equitable estoppel preclude respondent from correcting a prior mistake of law. Thomas v. Commissioner, 92 T.C. 206 (1989). Accordingly, we find that petitioner has not met his burden of proving that the settlement payment was based on anything other than the District Court's monetary judgment, representing compensatory damages awarded him under the ADEA statute, and redressing petitioner's claim for lost wages resulting from the termination of his employment. On the basis of the record before us, we are unable to conclude that any portion of the settlement payment reflected a tort claim for personal injuries. Hence, petitioner cannot exclude the $ 58,000.00 settlement payment from income under section 104(a)(2). Similarly, respondent has met his burden of proving the increased deficiency resulting from respondent's increase of petitioner's gross income for 1982 by $ *360 850.00 to reflect the portion of the court reporter's fees deducted by petitioner. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. 29 U.S.C. section 626(d) (1976) provides: (d) Filing of charge with Secretary; timeliness; conciliation, conference, and persuasion. No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed -- (1) within 180 days after the alleged unlawful practice occurred; or (2) in a case to which section 14(b) [29 USCS § 633(b)] applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier. Upon receiving such a charge, the Secretary shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion. ↩
3. 29 U.S.C. section 626(c) provides: (c) Civil actions; persons aggrieved; jurisdiction; judicial relief; termination of individual action upon commencement of action by Secretary; jury trial. (1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act [the Age Discrimination in Employment Act of 1967 (the "ADEA")]: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this Act. * * *↩
4. 29 U.S.C. section 623(a) provides: (a) Employer practices. It shall be unlawful for an employer -- (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this Act [the ADEA].↩
5. Sec. 104(a)(2)↩ remains substantially similar to its original predecessor, which was enacted as part of the Revenue Act of 1918, ch. 18, sec. 213(b)(6), Pub. L. 254, 40 Stat. 1057, 1065-1066. The legislative history of the Revenue Act of 1918 fails to define "personal injuries or sickness." H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939-1 C.B. (Part 2) 86, 92. The legislative history of the Internal Revenue Code of 1954 also fails to define "personal injuries or sickness." H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 15-16 (1954).
6. 29 U.S.C. section 626(b) provides: Amounts owing to a person as a result of a violation of this Act [the ADEA] shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended (29 USC 216, 217↩): Provided, That liquidated damages shall be payable only in cases of willful violations of this Act. In any action brought to enforce this Act the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Act, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.