Carmen PISTILLO,
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–2209.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1990.

Decided Aug. 24, 1990.

Thomas I. Hausman (argued), Adrienne C. Lalak, Kahn, Kleinman, Yanowitz & Arnson, Cleveland, Ohio, for petitioner-appellant.

Peter K. Scott, I.R.S., Gary R. Allen, Acting Chief, Bruce R. Ellisen (argued), Ann Belanger Durney, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellee.

Before KEITH and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

KEITH, Circuit Judge:

On April 30, 1982, petitioner Carmen Pistillo ("Pistillo") received $58,000 from his former employer, pursuant to the settlement of an age discrimination lawsuit. *See* Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. This appeal requires us to decide whether the United States Tax Court ("the Tax Court") properly determined that Pistillo's settlement award is taxable. Because we conclude that Pistillo's settlement award is excludable from his taxable income pursuant to § 104(a)(2) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 104(a)(2), we REVERSE the order of the Tax Court.

## I.

For over ten years, Pistillo was employed by the Cleveland Tool & Supply Company ("Cleveland Tool") as a commissioned salesman. A Cleveland Tool managerial employee, Harry Parks, often made disparaging remarks about Pistillo's work and reputation, including statements that he was "old"; had "gray hair"; and was unable to relate to his younger clients. On April 6, 1979, when Pistillo was 57 years old, Cleveland Tool terminated his employment and replaced him with a younger employee. Pistillo has remained unemployed.

After the termination of his employment by Cleveland Tool, Pistillo concluded that he had been a victim of age discrimination. On July 27, 1979, Pistillo filed a timely notice of his intent to sue Cleveland Tool with the Wage and Hour Division of the United States Department of Labor. *See* ADEA, 29 U.S.C. § 626(d). On June 5, 1980, the Equal Employment Opportunity Commission ("the E.E.O.C.") notified Pistillo that its efforts to resolve his dispute with Cleveland Tool through informal methods of conciliation, conference and persuasion had been unsuccessful. *See id.* The E.E.O.C. advised Pistillo of his right to institute an independent civil action against Cleveland Tool. *See* ADEA, 29 U.S.C. § 626(c).[1]

In October 1980, Pistillo filed a complaint against Cleveland Tool in the United States District Court for the Northern District of Ohio. Initiating his suit in equity and at law, Pistillo alleged that the true reason for the termination of his employment was his age, in violation of the ADEA, 29 U.S.C. §§ 621–634[2]; 42 U.S.C. §§ 1981 and 1988; and the fifth and fourteenth amendments to the United States Constitution. Pistillo sought an order: (1) declaring that Cleveland Tool had discriminated against him on the basis of his age; (2) granting him a

---

1. 29 U.S.C. § 626(c)(1) provides:

Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter. *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.

2. 29 U.S.C. § 623(a) provides:

*(a) Employer practices.*
It shall be unlawful for an employer—

(1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

preliminary and permanent injunction enjoining Cleveland Tool from abridging his rights; (3) requiring Cleveland Tool to reinstate him to the position he had held on April 6, 1979, and to pay him all wages, including overtime, that he would have received in the normal course of his employment from April 6, 1979 to the date of his reinstatement; and (4) granting him reasonable attorneys fees.

Pistillo's age discrimination suit was tried before a jury. The district court instructed the jury that if it found that Cleveland Tool had discriminated against Pistillo on the basis of his age, it could award compensation for back pay, including the amount of sales commissions Pistillo did not receive because of his discharge. The district court also instructed the jury that it could award Pistillo liquidated damages and compensatory damages. The district court further instructed the jury that any award of damages to Pistillo would not be taxed; therefore, the jury should not consider taxes in awarding damages.

On March 13, 1981, the jury found for Pistillo and awarded him $55,000 in compensatory damages. The district court awarded Pistillo attorneys fees in the amount of $22,432.83. On August 6, 1981, the judgement was filed. Cleveland Tool appealed to this court on January 13, 1982.

While the appeal was pending, Cleveland Tool initiated settlement negotiations with Pistillo. On April 30, 1982, the parties settled the litigation by executing a document entitled "Release and Settlement." [3] On the same day, Cleveland Tool paid Pistillo $81,562.58, which was allocated as follows: $58,000 was paid to Pistillo; $22,706.18 was paid for his attorney fees; and $856.40 was paid for court reporter fees. In accordance with the release and settlement, Cleveland Tool dismissed its appeal.

Pistillo did not include the $58,000 received by him from Cleveland Tool in his gross income for 1982.[4] Pistillo reasoned that the settlement proceeds were excludable from his gross income under § 104(a)(2), which excludes from gross income damages received on account of personal injuries. 26 U.S.C. § 104(a)(2). On November 6, 1986, the Commissioner of Internal Revenue ("the Commissioner") issued a Notice of Deficiency to Pistillo. In the notice, the Commissioner stated that Pistillo had a tax deficiency of $22,131.90. The Commissioner explained that Pistillo should have included the $58,000 settlement award in his gross income for the 1982 taxable year because the suit was brought to secure lost wages, as opposed to damages for personal injuries.

On January 29, 1987, Pistillo petitioned the Tax Court seeking a redetermination of the deficiency.[5] On July 11, 1989, the Tax Court issued its opinion, adopted the position advanced by the Commissioner, and concluded that Pistillo's settlement was taxable income. *See Pistillo v. Commissioner*, 57 T.C.M. (CCH) 874, 881 (1989). The Tax Court entered its order and decision on July 26, 1989. Pistillo filed a notice of appeal on October 13, 1989.

## II.

On appeal, Pistillo argues that the Tax Court erred in holding that his $58,000

---

**3.** The Release and Settlement between Pistillo and Cleveland Tool provided:

> For the sole consideration of the payment of the sum of Eighty–One Thousand Five Hundred Sixty–Two Dollars and Fifty–Eight Cents ($81,562.58) by Cleveland Tool, the receipt of which is hereby acknowledged, [Pistillo] does hereby forever release and discharge Cleveland Tool ... from any and all judgments, claims, demands, actions, causes of action, wages, damages, costs, claims of reinstatement, claims of interest, awards of attorneys' fees, expenses and compensation or suits of law or equity of whatsoever kind of nature, which he ... may now or hereafter have or assert against Cleveland Tool, ... growing out of or resulting from his employment at Cleveland Tool, whether now existing or hereafter developing, and whether now known or unknown, including but not limited to, any claims he had asserted or judgments he had been awarded in Case No. C80–1941, United States District Court for the Northern District of Ohio, Eastern Division, entitled 'Carmen Pistillo, Plaintiff, v. Cleveland Tool and Supply Co., Defendant.'

> *Pistillo v. Commissioner*, 57 T.C.M. (CCH) 874, 877 (1989) (quoting "Release and Settlement").

**4.** In 1982, Pistillo was a cash basis, calendar year taxpayer.

**5.** When Pistillo filed his petition with the Tax Court, he was a resident of Solon, Ohio.

settlement award was not excludable from his taxable income under § 104(a)(2). In response, the Commissioner contends that the Tax Court correctly concluded that Pistillo's settlement award: (1) represented compensatory damages awarded to him under the ADEA; (2) redressed his claim for lost wages resulting from the termination of his employment; (3) did not reflect a tort claim for personal injuries; and (4) did not warrant exclusion from his taxable income pursuant to § 104(a)(2). Relying substantially upon our holding in *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986) *aff'd*, 848 F.2d 81 (6th Cir.1988), and the Third Circuit's recent opinion in *Rickel v. Commissioner*, 92 T.C. 510 (1989) *aff'd in part and rev'd in part*, 900 F.2d 655 (3rd Cir. 1990), we conclude that under § 104(a)(2), the $58,000 paid by Cleveland Tool to Pistillo in settlement of his age discrimination suit was excludable from his taxable income as damages received on account of personal injuries.

The IRC states: "[e]xcept as otherwise provided ..., gross income means all income from whatever source derived...." 26 U.S.C. § 61(a). All accessions to wealth are presumed to be gross income, unless the taxpayer can demonstrate that the accessions qualify for specific exclusions created by the IRC. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955).

Section 104(a)(2), the exclusion at issue here, provides that "gross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness...." For purposes of § 104(a)(2), several courts have explained that the meaning of "personal injuries" encompasses both physical and nonphysical injuries. *See Rickel*, 900 F.2d at 658; *Bent v. Commissioner*, 835 F.2d 67, 70 (3d Cir.1987); *Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir.1983); *Threlkeld*, 87 T.C. at 1297. As defined by the Treasury regulations, a claim for an exclusion based on a personal injury award must assert violations of tort or tort-type rights. 26 C.F.R. § 1.104–1(c). *See Byrne v. Commissioner*,

883 F.2d 211, 214 (3d Cir.1989). The essential element, however, of an "exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor." *Glynn v. Commissioner*, 76 T.C. 116, 119 (1981).

In *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986), *aff'd*, 848 F.2d 81 (6th Cir. 1988), the Tax Court held that a portion of a malicious prosecution settlement was attributable to injury to the taxpayer's professional reputation; constituted damages received on account of personal injuries; and thus, was excludable from the taxpayer's gross income. *See* 87 T.C. at 1308. With a 15–1 vote, the Tax Court established the prevailing test to determine whether a specific damage award qualifies for the exclusion:

> Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. *Therefore, whether the damages received are paid on account of "personal injuries" should be the beginning and end of the inquiry.* To determine whether the injury complained of is personal, we must look to the origin and character of the claim ..., and not to the consequences that result from the inquiry.
>
> .    .    .    .    .
>
> Exclusion under section 104 will be appropriate if compensatory damages are received on account of any invasion of the rights an individual is granted by virtue of being a person in the sight of the law.

*Id.* at 1299, 1308 (citations omitted) (emphasis added).

Affirming the Tax Court in *Threlkeld*, we held that the "nonpersonal consequences of a personal injury, such as a loss of future income are often the most persuasive means of proving the extent of the injury that was suffered, [but] the personal nature of an injury should not be defined by its effect." 848 F.2d at 84. For purposes of § 104(a)(2), the Third, Ninth and Tenth Circuits also have concluded that to determine whether damages received by a taxpayer were paid on account of personal

injuries, courts must look to the nature of the claim and not to the consequences that result from the injury. *See Wulf v. City of Wichita*, 883 F.2d 842, 872–73 (10th Cir. 1989) (where taxpayer was wrongfully discharged in violation of the first amendment under § 1983, held that his settlement award compensated him for personal injuries and was nontaxable under § 104(a)(2)); *Metzger v. Commissioner*, 88 T.C. 834 (1987), *aff'd without published opinion*, 845 F.2d 1013 (3d Cir.1988) (concluding that even though taxpayer sought an award of back pay under Title VII, sex discrimination was deemed a personal injury and a substantial portion of the damage award was excludable under § 104(a)(2)); *Bent v. Commissioner*, 835 F.2d 67, 70 (3rd Cir. 1987) (explaining that even though the settlement was based in part on taxpayer's lost wages, the damage award for the violation of his first amendment rights compensated him for his personal injuries and thus, was excludable under § 104(a)(2)); *Roemer v. Commissioner*, 716 F.2d 693, 700 (9th Cir.1983) (holding that compensatory and punitive damages received in taxpayer's defamation suit were excludable from gross income, since under California law, defamation of an individual is a personal injury.) *See also Byrne v. Commissioner*, 883 F.2d 211, 216 (3d Cir.1989) (extending the analysis of *Bent* and *Roemer* both to a retaliatory discharge claim under the Fair Labor Standards Act and a wrongful discharge claim under state law).

In *Rickel v. Commissioner*, 92 T.C. 510 (1989), *aff'd in part and rev'd in part*, 900 F.2d 655 (3rd Cir.1990), the Third Circuit explained that because an age discrimination claim is an assertion of a tort or tort-type right, rather than an economic right arising out of a contract, the taxpayer's entire settlement award was excludable from his gross income. 900 F.2d at 661. In *Rickel*, as in the case at bar, the taxpayer sued his former employer in federal court, alleging a violation of the ADEA, 29 U.S.C. §§ 621–634. *See* 900 F.2d at 656. While the jury was deliberating, the parties entered into a settlement agreement that obligated the employer to pay $105,000 to the taxpayer. The taxpayer did not report the settlement amount in his gross income. The Commissioner, however, determined that the $105,000 was taxable. After the taxpayer filed his petition for a re-determination of the tax deficiency, the Tax Court found that one-half of the settlement was taxable income and one-half was excludable under § 104(a)(2).

On appeal, the order of the Tax Court was reversed. The Third Circuit found that: (1) age discrimination was more analogous to a personal injury claim than a breach of contract action, as it alleged a violation of a duty owed to the taxpayer by his employer which arose by operation of law; (2) the taxpayer's ADEA action amounted to an assertion of a tort or tort-type right; and (3) all damages flowing from the taxpayer's age discrimination claim were excludable under § 104(a)(2). *See Rickel*, 900 F.2d at 661–62. The Third Circuit then emphasized that all employers have a statutory duty to refrain from discriminating against employees on the basis of their age. "Society has made the moral and economic determination that as a matter of law it will not abide such discrimination. Such a duty arises even in the absence of a written employment contract...." *Id.* at 662. Consistent with prevailing judicial views, the Third Circuit concluded that a workplace discrimination suit may be most appropriately characterized as the assertion of a tort-type right to redress for personal injuries. *Id.* at 662. *See e.g., Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (describing § 1981 as "part of a federal law barring racial discrimination, which ... is a fundamental injury to the individual rights of a person"); *Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (analogizing a violation of § 1983 to a violation of the fourteenth amendment which "is an injury to the individual rights of the person").

Reviewing the nature of Pistillo's claim, we conclude that his age discrimination lawsuit is analogous to the assertion of a tort-type right to redress personal injuries. Cleveland Tool discriminated against Pistil-

lo on the basis of his age and invaded the rights Pistillo "is granted by virtue of being a person in the sight of the law." *Threlkeld,* 87 T.C. at 1308. Contrary to the arguments of the Commissioner, Pistillo has not brought separate actions to seek back pay damages for his pain and suffering.[6] Pistillo merely sought the remedies afforded by the ADEA as compensation for the *personal injury* he suffered as a result of his employer's invidious age discrimination. Pistillo's loss of wages—a substantial nonpersonal consequence of his employer's age discrimination—did not transform the discrimination into a nonpersonal injury. *See Rickel,* 900 F.2d at 663. Therefore, we conclude that the entire settlement award received by Pistillo, on account of his age discrimination lawsuit against Cleveland Tool, is excludable from his taxable income under § 104(a)(2).

Given the result we reach today, Pistillo will have less federal tax liability than if he had not suffered age discrimination in the first place. The reality, however, as opposed to the hypothetical, is that Pistillo did suffer invidious age discrimination. Pistillo endured his employer's indignities, insults and age discrimination; suffered a dignitary tort; and was personally injured. *Cf. Curtis v. Loether,* 415 U.S. 189, 195 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974) (dictum) (analogizing an action to redress racial discrimination to an action for defamation or the intentional infliction of emotional distress). Pistillo is now entitled to receive federal tax treatment *equal* to that received by the typical tort victim who suffers a physical injury and, as a

result, receives a settlement award. *See Rickel,* 900 F.2d at 664 ("[T]he successful ADEA plaintiff is being treated no better ... than the typical tort victim who suffers a physical injury. We see no reason to treat one personal injury victim any differently than another."); *Miller v. Commissioner,* 93 T.C. 330, 337 (1989) ("Section 104 does not distinguish between physical and nonphysical injuries, and we see no sound reason to construe the statute in such a way as to not afford the same tax treatment to recoveries for all types of 'personal' injury regardless of consequences.") (citation omitted).

Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Just as the common law punishes tort-feasors, the ADEA punishes employers who practice age discrimination—regardless of whether the discrimination manifests itself in express acts of ageism or through more subtle and evasive forms. To effectuate the purposes of both the ADEA and the IRC, we must make the victims of arbitrary age discrimination whole by providing equal recognition to the substantial indignities and personal injuries they have suffered.

Thus, we hold that the age discrimination settlement award received by Pistillo qualifies for the § 104(a)(2) exclusion. Accordingly, we REVERSE the order of the Tax

---

**6.** Relying upon our decisions in *Bowman v. United States,* 824 F.2d 528 (6th Cir.1987), and *Hill v. Spiegel, Inc.,* 708 F.2d 233 (6th Cir.1983), the Commissioner argues that the order of the Tax Court should be affirmed. We do not find the Commissioner's arguments to be persuasive. First, in *Bowman,* both parties agreed, prior to trial, that the taxpayer's race discrimination settlement award constituted back wages for past employment. *See Bowman,* 824 F.2d at 529. In the present case, the parties have not reached such an agreement. Second, in *Hill,* we held that plaintiff's award for pain and suffering fell outside the scope of the ADEA. *See Hill,* 708 F.2d at 235. Pistillo, however, remains entitled to his settlement award which reflects all "the remedies afforded by the [ADEA] as compensa-

tion for the personal injury he suffered as a result of his employer's act of discrimination." *Rickel,* 900 F.2d at 663. Third, whether Cleveland Tool paid Pistillo a portion of the settlement award to compensate him for pain and suffering or lost back pay is irrelevant to the § 104(a)(2) inquiry. *See Threlkeld,* 87 T.C. at 1299 (determining whether or not the damages were paid on account of a personal injury is "the beginning and the end" of the § 104(a)(2) inquiry). *See also Roemer,* 716 F.2d at 699 ("The nonpersonal consequences of a personal injury, such as a loss of future income, are often the most persuasive means of proving the extent of the injury that was suffered. The personal nature of an injury should not be defined by its effect.").

Court and REMAND for entry of an order consistent with this opinion.