Burns P. and Marjorie DOWNEY,
Plaintiffs–Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Defendant–
Appellant.

No. 93–3763.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1994.

Decided Aug. 30, 1994.

Rehearing and Suggestion for
Rehearing En Banc Denied Nov. 18, 1994.

Steven E. Reick, Woodstock, IL (argued), for petitioners-appellees.

David L. Jordan, I.R.S., Michael L. Paup, Gary R. Allen, Ann Belanger Durney (argued), Edward T. Perelmuter, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Paul H. Thorton, I.R.S., Regional Counsel, Chicago, IL, for respondent-appellant.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Burns P. Downey along with his wife Marjorie filed a joint petition in the Tax Court challenging the Commissioner's assertion that they owed additional tax for 1985. The Tax Court found for the Downeys, holding that the amount received by a taxpayer in settlement of litigation under the Age Discrimination in Employment Act ("ADEA") is excludable from gross income under IRC § 104(a)(2). We reverse and remand this case to the tax court.

## I. Background

United Air Lines Inc. ("United") forced Burns Downey, an airline pilot, into retirement at the age of sixty. Burns responded by filing a federal suit alleging a violation of the ADEA. *See* 29 U.S.C. §§ 621 *et seq.* On December 27, 1985, Burns and United entered into a settlement agreement—for $120,000 Burns agreed to release United from all claims. The parties structured their settlement payments by calling half of the money "back-pay," and the other half "liquidated damages." The Downeys' reported only the back-pay portion ($60,000) as income on their 1985 tax return. On February 23, 1989, the IRS issued a notice of deficiency to the taxpayers of $43,237 for 1985. In response the Downeys filed a petition in the

Tax Court seeking a redetermination of the assessment. The Downeys claimed an exception for both the liquidated damages and back-pay portions of the settlement payment.

On a fully stipulated factual record the Tax Court held that both portions of the ADEA settlement payment were excludable from gross income under IRC § 104(a)(2). However, upon learning of *Burke v. United States,* 929 F.2d 1119, 1123 (6th Cir.1991) ("*Burke I* "), *rev'd* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) ("*Burke* "), then pending before the Supreme Court, the Tax Court withheld issue of its mandate. After the Supreme Court released *Burke* (holding that back-pay settlement awards received under Title VII are not excludable under IRC § 104(a)(2)), —— U.S. at ——, 112 S.Ct. at 1873, the Commissioner filed a motion in the Tax Court for reconsideration (under *Burke* ) of the Downeys' claim. After review the Tax Court issued a supplemental opinion holding that (1) the ADEA "evidence[d] a tort-like conception of injury and remedy" for purposes of *Burke,* and (2) all of the Downeys' damages received through their ADEA litigation are excludable from tax.

## II. Discussion

■ On appeal the Commissioner argues that an ADEA settlement payment providing for the separate payment of back-pay and liquidated damages does not fit within any recognized tax exception including IRC § 104(a)(2). We agree. Since *Stanton v. Baltic Mining Co.,* 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546 (1916), the United States can require persons who receive income within its jurisdiction to share part of that income with the national treasury though direct federal income taxes. To this end Congress has defined taxable income to include, generally, all income not specifically excluded by the code. *See* IRC §§ 61–63. As the Supreme Court has observed, Congress "exert[ed] the full measure of its taxing power, and [brought] within the definition of income any accession to wealth." *Burke,* —— U.S. at ——, 112 S.Ct. at 1870 (citations omitted). Thus, all accessions to wealth are taxable unless a taxpayer can fit his gain into a statutory exception. The Downeys believe

they have found such an exception. Damages received from a personal injury lawsuit, as provided under IRC § 104(a)(2), are among those sources of gain that have been statutorily excepted from taxation. The text of IRC § 104(a)(2) provides as follows:

> Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

Our task is to determine whether settlement payments pursuant to an ADEA lawsuit fall within this exception.

In reading § 104(a)(2) we note that the taxable status of a settlement agreement must be determined by the nature of the claim upon which the litigation was first based. The text of § 104(a)(2)—"the amount of *any* damages received (whether by *suit or agreement* ...)"—indicates that payments of a settlement agreement are to be treated for tax purposes as if the money came by an award in the underlying suit. *See Burke,* —— U.S. at ——, 112 S.Ct. at 1872 (holding that the taxable character of the settlement payment must be the same as if the payment arose from an award on the underlying claim). Thus, before we may characterize the Downeys' settlement agreement we must analyze the character of the damages available under an ADEA suit. We again find relevant language in the text of § 104(a)(2). The language of the text limits the exception to only "damages received ... on account of *personal injuries* or sickness...." IRC § 104(a)(2). Justice Scalia cogently argued that the plain language of § 104 must be read as only excluding awards from injuries to a taxpayer's physical or mental health (and consequently awards such as the Downeys' would not be excludable under § 104(a)(2)). *See Burke,* —— U.S. at ——, 112 S.Ct. at 1874 (Scalia J., concurring). The treasury regulations drafted to enforce § 104(a)(2) have interpreted the term "damages" to mean an amount received through prosecution or settlement of an action based

upon tort or tort-type rights. Treas.Reg. § 1.104–1(c). This treasury regulation deserves judicial deference so long as the agency's interpretation is within the reasonable range of the statutory text. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Justice Scalia has suggested that this regulation so misses the mark when compared with the language of IRC § 104(a) that it is not entitled to deference under *Chevron. Burke,* —— U.S. at ——, 112 S.Ct. at 1874 (Scalia J. concurring). While this view has considerable attraction, we need not consider the viability of the treasury regulation if we find that a suit under the ADEA does not even clear the Treasury's low hurdle of being "tort-type" (and thus its damages constitute taxable income regardless).

The issue of whether ADEA claims are at least tort-like, while new to our court, has been addressed by other courts of appeal. *See Rickel v. Commissioner,* 900 F.2d 655 (3d Cir.1990) (holding for the exclusion of such settlement agreements from taxation under § 104); *Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir.1990); and *Redfield v. Insurance Company of North America,* 940 F.2d 542 (9th Cir.1991). We note, however, that all these decisions antedate the Supreme Court's explanation of § 104(a)(2) in *Burke.* As the Tax Court recognized that the analytical framework adopted in *Rickel, Pistillo* and *Redfield* was inconsistent with the approach later taken in *Burke,* we limit our discussion to *Burke* as the most pertinent teaching on this matter.

In *Burke,* the Court reversed a Sixth Circuit decision that had held back-pay (received in settlement of a Title VII lawsuit) excludable from gross income under § 104(a)(2). *See Burke I,* 929 F.2d at 1123, *rev'd* —— U.S. at ——, 112 S.Ct. at 1870. The court of appeals had adopted the reasoning of both *Pistillo* and *Rickel* in rejecting the federal government's position that the remedies provided by the statute determined whether the provision created a tort-type right. In reversing the Sixth Circuit, however, the Court expressly defined a tort as a " 'civil wrong, other than breach of contract, for which the

court will provide a remedy in the form of an action for damages,'" *Burke,* —— U.S. at —— — ——, 112 S.Ct. at 1870–71 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* 2 (1984)), and emphasized that "it is solely by virtue of the right to damages that the wrong complained of is to be classed as a tort." *Burke,* —— U.S. at ——, 112 S.Ct. at 1871 (quoting R. Heuston, *Salmond on the Law of Torts* 9 (12th ed. 1957)). The Court reasoned that because the concept of a tort is inextricably bound up with the nature of the remedies, the remedial scheme embodied in the statute is the critical factor for § 104(a)(2) purposes. *Burke,* —— U.S. at —— n. 7, 112 S.Ct. at 1872 n. 7 ("We believe that consideration of the remedies available under Title VII is critical in determining the 'nature of the statute' and the 'type of claim' brought by respondents for purposes of § 104(a)(2)"). The Court then examined the nature of the remedies provided by Title VII and concluded that the statute did not redress a tort-type personal injury within the meaning of § 104(a)(2). *Burke,* —— U.S. at —— – ——, 112 S.Ct. at 1872–74.

*Burke* teaches us that the hallmark of tort liability is the availability of a broad range of damages to compensate the plaintiff for injuries caused by the violation of a legal right, and while such damages often are described in compensatory terms, tort damages usually "redress *intangible* elements of injury." *See Burke,* —— U.S. at ——, 112 S.Ct. at 1871.

■ We believe that *Burke* stands for the proposition that a federal anti-discrimination statute must provide compensatory damages for intangible elements of personal injury (such as pain and suffering, emotional distress, or personal humiliation) to constitute a tort-type personal injury and receive tax exempt treatment under § 104(a)(2). The issue in this case, therefore, reduces to whether the ADEA provides compensatory damages for those intangible elements of injury essential to a personal injury tort action.

Congress created the ADEA in the hope of promoting the employment of older persons by banning arbitrary age discrimination. *See* Age Discrimination in Employment Act of 1967, Pub.L. No. 90–202, § 2(b), 81 Stat. 602. The remedial provision of the ADEA empowers courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the statute]." 29 U.S.C. § 626(b). Significantly, however, for § 104(a)(2) purposes, litigants under the ADEA may not recover the broad range of compensatory damages for intangible elements of injury that characterize tort-type personal injury statutes. ADEA litigants cannot recover damages for either pain and suffering, *Pfeiffer v. Esses Wire Corp.,* 682 F.2d 684, 687–88 (7th Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982), or for emotional distress, *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 147 (2d Cir.1984). With respect to remedies, the only difference between the scheme embodied under the ADEA and that under Title VII is that under the ADEA a plaintiff may often recover liquidated damages in addition to lost wages when the employer's violation of the statute has been willful. *See* 29 U.S.C. § 626(b) (providing for equitable, judicial and legal relief for violation of the ADEA); *see also Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993) (holding that liquidated damages were available when an employer knows its conduct is illegal). Thus, unless the nature of the ADEA liquidated damages recompense for the intangible elements of a tort-type injury, we are bound by *Burke* to hold that all ADEA damages are nonexcludable under § 104(a)(2).

■ At the present time there is a division in the courts of appeals over the character of the ADEA liquidated damages. Some circuits have stated that the character of liquidated damages is strictly punitive, *see Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 282 (2d Cir.1987); *Criswell v. Western Airlines Inc.,* 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd. on other grounds,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); *Lindsey v. American Cast Iron Pipe Co.,* 810 F.2d 1094, 1102 & n. 7 (11th Cir.1987), while others have stated that ADEA liquidated damages replace prejudgment interest, *see Power v. Grinnell Corp.,* 915 F.2d 34, 41–42 (1st Cir.1990); *Hamilton v. 1st Source Bank,* 895 F.2d 159, 166 (4th Cir.1990); *McMann v. Texas City Refining, Inc.,* 984 F.2d 667, 673 (5th Cir. 1993); *Rose v. National Cash Register Corp.,*

703 F.2d 225, 229–30 (6th Cir.1983). This court adheres to the position that ADEA liquidated damages replace prejudgment interest, *see e.g., Fortino v. Quasar Co.,* 950 F.2d 389, 387–89 (7th Cir.1991); *EEOC v. O'Grady,* 857 F.2d 383, 391 n. 13 (7th Cir. 1988); *Coston v. Plitt Theaters, Inc.,* 831 F.2d 1321, 1335–37 (7th Cir.1987), *vacated on other ground,* 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), *on remand,* 860 F.2d 834 (7th Cir.1988). The rational implication is that as a replacement for prejudgment interest, liquidated damages, as the name implies, compensate a party for those difficult to prove losses that often arise from a delay in the performance of obligations—as a type of contract remedy. *See Rex Trailer Co. v. United States,* 350 U.S. 148, 151, 76 S.Ct. 219, 221, 100 L.Ed. 149 (1956) (discussing liquidated damages as they relate to contractual remedies). In any event, whatever the appropriate characterization of ADEA liquidated damages (be they punitive or contractual), as a matter of law they do not compensate for the intangible elements of a personal injury. Thus lacking an essential element of a tort-type claim, such damages cannot be excluded from taxation under § 104(a)(2). The Downeys' back-pay and liquidated damages payments are taxable. This case is reversed and remanded to the tax court for proceedings consistent with this opinion.

REVERSED AND REMANDED.