**William D. BOWMAN and Charlotte N. Bowman, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 86–1595.**

United States Court of Appeals, Sixth Circuit.

Submitted June 12, 1987.

Decided Aug. 5, 1987.

William D. Bowman, pro se.

R. Todd Luoma, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Ellen Christensen, Asst. U.S. Atty., Detroit, Mich., Michael L. Paup (Lead Counsel), Roger M. Olsen, Tax Div.—Dept. of Justice, Washington, D.C., Richard Farber, John J. Boyle, for U.S.

Before MERRITT and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

The main issue presented in this appeal concerns whether the District Court correctly held that back wages paid to plaintiff in 1981 by his employer pursuant to the settlement of a discrimination suit were subject to FICA taxation in 1981, the year in which the award was received but subsequent to the years to which the back pay relates.

**I.**

In the mid-1970's, Mr. Bowman filed a race discrimination suit against his employer, Ford Motor Company. In settlement of that suit the parties agreed that Ford would pay Mr. Bowman back wages in the amount of $136,544.23 and that Mr. Bowman would apply for and accept immediate retirement. Under the terms of the settlement, Mr. Bowman continued to be entitled to his normal retirement benefits. On December 16, 1980, the settlement was approved by an order of this Court, and subsequently in January, 1981, the United States District Court for the Eastern District of Michigan entered judgment on the settlement.

Mr. Bowman retired on February 1, 1981, and he received the full amount of the settlement in 1981. Ford paid Mr. Bowman

total wages of $143,563.97 in 1981. In addition to the wages paid pursuant to the settlement, this amount included some $7,000 for wages Mr. Bowman earned, prior to his retirement, in January, 1981, and payment for vacation time he accumulated in 1980. In 1981, Ford withheld FICA taxes of $1975.05 from Mr. Bowman's wages based on the application of the FICA tax rate to wages of $29,700, which was the maximum amount of wages subject to FICA taxation in 1981. On their 1981 joint income tax return taxpayers William and Charlotte Bowman reported the total wages of $143,563.97 they had received from Ford in 1981 as income for federal income tax purposes that year.

In May, 1985, taxpayers filed *pro se* the instant refund suit in the United States District Court for the Eastern District of Michigan. As the first count in their complaint, taxpayers alleged that the settlement wages Mr. Bowman received in 1981 were exempt from FICA taxation and sought a refund of that portion of the FICA taxes attributable to those wages. In support of this claim, taxpayers contended: (1) that the settlement was approved in December, 1980, and therefore the settlement wages were constructively received in 1980, not 1981, and Mr. Bowman had previously paid the maximum FICA tax for 1980, and (2) that, in any event, FICA taxation of the settlement wages was improper because those wages represented back wages for years in which Mr. Bowman had paid maximum FICA taxes.

On March 31, 1986, a hearing on a Government motion for summary judgment was held in the District Court. The District Court rendered an opinion from the bench. In that opinion the court agreed with the Government that the settlement wages were subject to FICA taxation. In this regard, the court found that the settlement wages did not fall within any statutory exemption from FICA taxation, that because the wages were paid in 1981 they were subject to FICA taxation in that year, notwithstanding that the wages represented compensation paid for work performed in earlier years, and that the wages could not be treated as having been constructively received in 1980.

## II.

The basic question in this case relates to the proper timing of FICA taxation for the settlement received by Mr. Bowman: whether the back pay should be taxable in the year the award is received, as the District Court held, or in the year or years to which the back pay relates, as taxpayers claim. In particular, we address the following language from the District Court's bench disposition: "The wages need not be for work performed in 1981. It is sufficient that the wages were paid in 1981, even for employment in previous years." Tr. 4.

Pursuant to the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101–3126 (1982), Section 3101 of the Internal Revenue Code imposes a tax on employees for old-age survivors and disability insurance, commonly known as social security. Assessed as a percentage of the wages an employee earns, the FICA tax is collected by the employer, who deducts the amount of the tax from the wages he pays. *See* 26 U.S.C. § 3102 (1982). Section 3121(a) of the Code defines "wages" for purposes of FICA tax as "all remuneration for employment" unless specifically excepted under the provisions of Section 3121(a)(1) through (a)(20). Section 3121(b) defines "employment," in pertinent part, as "any service, of whatever nature, performed ... (A) by an employee for the person employing him ... (i) within the United States...."

The employee tax attaches at the time that the wages are received by the employee. Treas.Reg. § 31.3101–3 (1954). The regulations provide further that "[i]n general, wages are received by an employee at the time that they are paid by the employer to the employee. Wages are paid by an employer at the time that they are actually or constructively paid...." Treas.Reg. § 31.3121(a)–2(a) (1954).

In our view, the FICA tax treatment of the settlement involved in this case basically raises an allocation issue. The parties agree that the settlement award constituted wages for employment. Accordingly, we consider the Supreme Court decision in a similar context, *Social Security Bd. v.*

*Nierotko,* 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946). In that case the Supreme Court considered the issue of whether a "back pay" award under the National Labor Relations Act to an employee who was wrongfully discharged should be treated under the Social Security Act as "wages" for which the employee is entitled to credit on his Old Age and Survivors Insurance Account. The Court held that such back pay did constitute wages under the Social Security Act.

The Court held further that the back pay treated as wages should be allocated to the periods for which the wages would have been paid. The Court stated:

> Petitioner further questions the validity of the decision of the circuit court of appeals on the ground that it must be inferred from the opinion that the "back pay" must be allocated as wages by the Board to the "calendar quarters" of the year in which the money would have been earned, if the employee had not been wrongfully discharged. We think this inference is correct.
>
> . . . .
>
> If, as we have held above, "back pay" is to be treated as wages, we have no doubt that it should be allocated to the periods when the regular wages were not paid as usual.

327 U.S. at 370, 66 S.Ct. at 644.

Neither the Government nor the *pro se* taxpayer has cited nor discussed any case authority on the question of allocating back pay awards attributable to prior years. No authority has been cited on the question of whether such awards should be allocated to prior years for purposes of F.I.C.A. or other federal taxes.

Because this case was brought *pro se* and submitted on briefs, this Court entered an order requesting the Government to address the reasoning of the *Nierotko* decision in a supplemental submission to the Court. In this submission, the Government argues that *Nierotko* is inapposite since the "determination in *Nierotko* that, for purposes of determining an employee's eligibility for Social Security benefits, an award of back wages should be allocated to the periods in which the wages were or

would have been earned simply has no bearing on the separate question presented here as to the year in which an award of back pay is subject to the F.I.C.A. tax."

The Government argues further that *Nierotko* implicated different policy concerns than the present case. The Government states with respect to *Nierotko* "that for purposes of determining an employee's eligibility and benefits an allocation of an award of back pay to the periods to which such pay relates is necessary to protect the employee's rights. No similar policy considerations are involved in the taxation question presented in the case at bar."

■ Although the Government is correct in pointing out that *Nierotko* is factually distinguishable from the present case (*i.e., Nierotko* involved back wages in the benefits context as opposed to the taxation context here), we nonetheless find the reasoning in *Nierotko* to be compelling and applicable. The settlement in this case constitutes wages for years prior to 1981, and yet the Government argues "because wages became subject to FICA taxation as they are received, it is irrelevant for purposes of the FICA tax imposed by Section 3101 whether or not the settlement wages were paid for work Mr. Bowman performed in 1981." Brief of Appellee at 13. But the fact that the back pay is for prior years in which the maximum tax has already been paid is not irrelevant if the allocation principle based on the reasoning in *Nierotko* is applicable. A settlement for back wages should not be allocated to the period when the employer finally pays but "should be allocated to the periods when the regular wages were not paid as usual." *Nierotko,* 327 U.S. at 370, 66 S.Ct. at 644. If the payments are in fact for prior years and if, under *Nierotko,* they should be attributable to prior years for purposes of eligibility and other incidents of Social Security benefits and administration, we can see no reason for not applying this same principle in allocating the incidents of taxation. Where there is no good reason not to apply the same principle, we advance the clarity, symmetry and fairness of the system by using the same principle of allocation.

Accordingly, we reverse the District Court on this portion of its disposition.

## III.

■ The second issue raised by the taxpayers concerns the District Court's determination that taxpayers were liable for the statutory interest which accrued on the deficiency in their federal income taxes for the taxable year 1981. The taxpayers have argued that because the Government failed to provide them with Forms 1099 for their Treasury bills and because the IRS purportedly was dilatory in discovering the deficiency and responding to their requests for information, all statutory interest on the deficiency should be abated. The District Court found that neither the Government's failure to provide taxpayers with Forms 1099R, nor any IRS delay in computing taxpayers' 1981 income tax liability excused the payment of interest on their admitted deficiency.

This second issue involves § 6601(a) of the Code which provides in relevant part:

If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid.

26 U.S.C. § 6601(a) (1982). This Court has held that there is no "good faith" exception under § 6601(a) for the tolling of interest penalty during the time a liability is contested. *United States v. Means*, 621 F.2d 236 (6th Cir.1980). Moreover, "[a] delay in assessment of income tax deficiencies and collection of interest on such deficiencies from the date such taxes should have been paid results in no injustice to a taxpayer, since he has had the use of the money, which should have been paid as taxes, during the period for which interest was charged." *Cibelli v. United States*, 585 F.Supp. 799, 800–01 (D.Conn.1984).

In light of the foregoing, we find taxpayers' claim to be without merit and therefore affirm this portion of the District Court's order.

### Conclusion

Accordingly, we reverse that portion of the District Court's disposition concerning the timing of the FICA taxation and remand for proceedings not inconsistent with this opinion.