**Milton and Marcia COHEN, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

No. CV 98–4695–CAS (MCx).

United States District Court,
C.D. California,
Western Division.

May 27, 1999.

Loren N. Cohen, Tuchman & Associates, Los Angeles, CA, for Plaintiffs.

Edward M. Robbins, Jr., Sandra R. Brown, Asst. U.S. Atty., Office of U.S. Atty., Tax Div., Los Angeles, CA, for Defendant.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SNYDER, District Judge.

The Court has considered defendant's Motion for Summary Judgment. After reviewing the materials submitted by the parties, the arguments of counsel, and the case file, the Court hereby grants defendant's Motion for Summary Judgment.

## I. BACKGROUND

In the instant action, plaintiffs Milton Cohen ("Cohen") and Marcia Cohen seek a refund of $6,254.65 in taxes paid pursuant to the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. § 3101 *et seq.* Presently before the Court is the motion by defendant United States for summary judgment pursuant to Fed.R.Civ.P. 56.

At issue in this case are severance payments made to Cohen by his employer over the course of five years. Cohen was employed by the South Coast Air Quality Management District ("SCAQMD") for approximately twenty-eight years. *See* Exhibit B to United States of America's Motion for Summary Judgment ("Defendant's Motion"). On July 2, 1993, Cohen signed a Severance Pay Agreement ("Agreement") with his employer. *See* Declaration of Milton Cohen, ¶ 3 ("Cohen Decl."). Pursuant to this Agreement, Cohen agreed to resign voluntarily from SCAQMD by August 15, 1993, in consideration of a severance pay-

ment. *See* Exhibit 3 to Plaintiffs' Opposition to United States of America's Motion for Summary Judgment ("Plaintiffs' Opp."). On August 15, 1993, Cohen resigned from his position at SCAQMD. Cohen Decl., ¶ 2.

The Agreement allowed employees to elect to receive their lump sum severance payment in 130 monthly payments or five annual payments. *See* Exhibit 3 to Plaintiffs' Opp. Cohen chose to receive his payments in five lump sum payments. *Id.* The total amount of Cohen's severance payment was $118,863.64. *See* Exhibit B to Defendant's Motion.

These lump sum payments were made to plaintiff over the course of the next five years. SCAQMD withheld FICA taxes from these payments. *See* Exhibit C to Defendant's Motion. Between May 1996 and November 1997, Cohen submitted four claims to the Internal Revenue Service ("IRS") requesting a refund of the FICA tax withheld from his annual severance payments. *Id.* The IRS denied plaintiff's requests for a refund. *Id.* Plaintiffs commenced the present action on June 10, 1998, pursuant to 26 U.S.C. § 7422, seeking a refund of FICA taxes withheld from Cohen's severance payments for 1994, 1995, 1996, and 1997.

## II. MARCIA COHEN'S CLAIMS

▪ The United States moves for summary judgment against plaintiff Marcia Cohen on the grounds that this Court lacks jurisdiction over her claims. Pursuant to 26 U.S.C. § 7422(a), the district court lacks jurisdiction to hear a claim for refund unless "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). In the present case, all of the claims for refund filed with the IRS were filed on behalf of Milton Cohen. *See* Exhibit C to Defendant's Motion. Marcia Cohen has not filed a claim for refund on her own behalf. Because she has failed to

comply with the statutory prerequisite for filing suit against the United States, this Court lacks jurisdiction over her claims. The Court hereby dismisses plaintiff Marcia Cohen's claims pursuant to Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts .... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

Plaintiffs make two primary arguments in support of their contention that the FICA taxes were wrongfully withheld from the payments. First, plaintiffs contend that the severance payments do not constitute "wages," and as such are not subject to taxation under the statute. Second, plaintiffs claim that even if the payments can be considered wages, the full amount of the payments should be considered taxable in 1993, the year in which Cohen signed the severance agreement.

### A. *Are the payments wages?*

■ The Federal Insurance Contribution Act, 26 U.S.C. §§ 3101, *et seq.,* finances Social Security and Medicare benefits. Pursuant to 26 U.S.C. § 3102, employers are required to collect FICA taxes by deducting the correct amount of tax from an employee's wages. Plaintiffs argue that the severance payments at issue in this case should not be considered wages, and therefore, FICA taxes were incorrectly withheld from the payments. The United States argues that the severance payments fit within the statutory definition of "wages," and thus, the taxes were properly withheld.

The Internal Revenue Code broadly defines "wages" as "all remuneration for employment" unless specifically excepted. 26 U.S.C. § 3121(a); 26 C.F.R. § 31.3121. "Employment" in this definition means "any service, of whatever nature, performed (A) by an employee for the person employing him . . . ." 26 U.S.C. § 3121(b). The Supreme Court has emphasized the inclusive nature of this definition:

> The very words 'any service . . . performed . . . for his employer,' . . . import breadth of coverage. They admonish us against holding that 'service' can be only productive activity. We think that 'service' as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

*Social Security Board v. Nierotko*, 327 U.S. 358, 365–66, 66 S.Ct. 637, 90 L.Ed. 718 (1946). "The notion of an 'employer-employee relationship' continues to be recognized as the touchstone for determining if a particular payment is subject to FICA taxation. In addition, courts recently construing I.R.C. § 3121 have followed *Nierotko* by affording the terms 'wages' and 'employment' broad, inclusive coverage." *Associated Elec. Coop., Inc. v. United States*, 42 Fed.Cl. 867, 872 (Fed.Cl.1999) (citations omitted).

Several factors are relevant to determining whether the payments at issue in the present case constitute "wages." Courts assessing similar situations look to the eligibility requirements for determining whether the payments are compensation for services. *See Lane Processing Trust v. United States*, 25 F.3d 662, 665 (8th Cir.1994); *Sheet Metal Workers Local 141 Supplemental Unemployment Benefit Trust Fund v. United States*, 64 F.3d 245, 251 (6th Cir.1995) ("eligibility require-

ments provide the most accurate test to determine whether a payment is truly in consideration for services"). Another relevant factor to be considered is the method by which the benefits are calculated. *See Associated Elec.*, 42 Fed.Cl. at 875.

In the present case, plaintiff's employer implemented the severance plan as a cost-cutting measure for SCAQMD. *See* Exhibit 3 to Plaintiff's Opp. The severance package was available only to employees with twenty or more years of continuous service with SCAQMD. *Id.* Benefits under the plan were calculated based on a fixed formula directly related to the individual employee's relationship with SCAQMD. *Id.* This formula was based on the employee's current salary, number of years with the company, and accrued vacation and sick leave. *See* Exhibit J to Defendant's Motion.[1] Therefore, the severance package is directly related to the employment relationship, both in terms of eligibility requirements and method of calculating benefits.

Case law interpreting similar agreements supports the position that the severance payments in the instant case constitute wages. In *Associated Electric*, the Court of Federal Claims found that voluntary "early-out" severance payments constituted wages. *Associated Elec.*, 42 Fed. Cl. at 876 As in the present case, payments under the "early-out" plan were available only to eligible employees, and were calculated using similar factors of length of service and salary. *See id.* ("Considering the 'early out' plan's eligibility requirements and method of computation, the weight of authority suggests that the payments at issue arose out of the employer-employee relationship and thus constitute wages under I.R.C. section 3121(a).").

Plaintiffs make several arguments in support of their contention that the payments do not constitute wages. Plaintiffs

---

1. Plaintiff's severance package was comprised of two separate figures: (1) $32,971.02 in accrued vacation and sick leave; and (2) $85,892.62 calculated by multiplying five percent of plaintiff's base salary ($60,106.80) by the number of years he worked at SCAQMD (28.58). *See* Exhibit B to Defendant's Motion.

first contend that because Cohen was no longer an employee of SCAQMD at the time the payments were made, the payments do not constitute compensation for services. This argument ignores the broad interpretation to the employee-employer relationship given in *Nierotko*. Because the payments are based on plaintiff's lengthy service to his employer, the payments can be considered compensation arising out of the employment relationship. Treas.Reg. § 31.3121(a)(1)j states that remuneration for employment "constitutes wages even though at the time paid the relationship of employer and employee no longer exists." Therefore, the employer-employee relationship need not be current in order for the payments to reflect compensation for services. *See also Gerbec v. United States,* 164 F.3d 1015 (6th Cir. 1999).

Plaintiffs next argue that the severance payment actually constitutes a settlement of Cohen's right to future claims against SCAQMD, including age discrimination claims. The Agreement itself does not contain any language to this effect. Plaintiffs also point to language in the Agreement by which Cohen agreed to waive "any and all rights ... against the District to present, continued or future employment with the District." Exhibit 3 to Plaintiff's Opp. Plaintiffs provide no authority for the proposition that an agreement giving up the right to future employment cannot be considered wages.

Upon review of the foregoing, the Court finds that the undisputed facts establish that the severance payments received by plaintiff represented remuneration for his employment with SCAQMD, and therefore, FICA taxes were properly withheld from these payments.[2]

**B.** *When are the payments taxable?*

Plaintiffs contend that even if the severance payments are considered wages, the payments were taxable when they were earned, and not when they were paid. Under this theory, plaintiffs argue that the lump sum total ($118,863.64), should be taxable as earnings in 1993, and Cohen would only be liable for FICA taxes up to the 1993 limit.

Section 3102 of the Internal Revenue Code provides that FICA tax "shall be collected by the employer of the taxpayer, by deducting the amount of tax from the wages as and when paid." 26 U.S.C. § 3102. The government contends that based on the plain language of this statute, FICA taxes are taxable when received by the employee, regardless of the year to which the wages relate.

Plaintiffs rely on the Sixth Circuit decision in *Bowman v. United States,* 824 F.2d 528 (6th Cir.1987), for the proposition that payments are taxable when earned. The case in *Bowman* involved payment by an employer for the settlement of a discrimination lawsuit, which was specifically labeled as "back pay." The court in *Bowman* found that the back pay settlement should be attributed to the years in which the back pay was earned. The government argues that *Bowman* is factually distinguishable, and was wrongly decided.

A recent district court case addressed a similar argument concerning the use of the "allocation" method for payment of FICA taxes, and found the decision in *Bowman* inapplicable. *Mazur v. Commissioner of Internal Revenue,* 986 F.Supp. 752, 754 (S.D.N.Y.1997). The court in *Mazur* found that Treasury Department regulations in effect deem FICA taxes to attach upon the actual (or constructive) receipt of wages. *Id.* at 755. Because these Treasury Regulations had remained unchanged

2. In support of its motion the government seeks to rely on a series of requests for admissions the government claims should be deemed admitted because plaintiffs failed to timely respond. Plaintiffs argue that these requests were in fact timely filed, or alternately seek to withdraw the admissions. The Court does not reach this issue because it has not relied on any of the admissions at issue to decide the present motion.

for over sixty years, the court found that the Regulations bear the weight of statutory authority. *Id.* In addition, the district court in *Mazur* found that *Bowman* relied on faulty authority in reaching its conclusion that the payments should·be taxed in prior years. *Id.* at 756.

The ·Court finds that *Bowman* is not controlling and is distinguishable from the facts at issue in the present action. The payments in *Bowman* were considered to be compensation for prior discrimination, and constituted an award of back pay. By contrast, the payments made to Cohen herein were made in consideration for his early retirement, and cannot be attributed to any previous wrongdoing by SCAQMD.

Therefore, the severance payments in the present · case were correctly taxable when paid to Cohen, and plaintiffs are not entitled to a refund pursuant to this theory.[3]

### C. *Are the payments deferred compensation?*

In the opposition to the government's motion for summary judgment plaintiffs raise the argument that the payments were made pursuant to a nonqualified deferred compensation plan as defined in 26 U.S.C. § 3121(v)(2)(C). Plaintiffs contend that as such, the payments are subject to the special timing provisions set forth in 26 U.S.C. § 3121(v)(2)(A).

Pursuant to 26 U.S.C. § 7422, a taxpayer must file a claim for refund prior to instituting suit against the United States. The regulations promulgated under section 7422(a) state: "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of

the exact basis thereof." · Treas.Reg. § 301.6402–2(b)(1). "Although courts have not required taxpayers to provide detailed explanations of their legal theories, or to develop full factual backgrounds in their refund claims, *Lemoge v. United States,* 378 F.Supp. 228, 232–33 (N.D.Cal.1974), the IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention, *United States v. Garbutt Oil Co.,* 302 U.S. 528, 531–33, 58 S.Ct. 320, 322–23, 82 L.Ed. 405 (1938). If the claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Boyd v. United States,* 762 F.2d 1369, 1371–1372 (9th Cir.1985).

Defendant argues that in the four claims filed with the IRS Cohen failed to present the argument that the payments constituted deferred compensation, and therefore, he is precluded from introducing this theory at this stage in the proceedings. A review of the claims filed by Cohen demonstrates that the only arguments advanced in the claims are based on the theories addressed above, *i.e.,* that the payments do not constitute wages because they are a release from future claims and future employment, or that the payments were taxable only in 1993. Plaintiff contends, however, that he raised the deferred compensation argument in his claim dated October 15, 1996. In this claim, plaintiff states "I believe my position is fully supported by the following [cases] ... and perhaps, Proposed Reg. 31.3121(v)(2)–1 and Proposed Reg. 31.3121(v)(2)–2, published in the Federal Register on January 25, 1996." Exhibit 3 to Defendant's Motion.[4]

---

**3.** Plaintiffs appear to argue that the separate taxation of these payments creates an inequitable result, because if the payments had been made as a lump sum payment in 1993, the amount would only have been taxable in 1993. However, it is clear that a single lump sum payment was not an option for Cohen, because SCAQMD chose to make the payments payable over the course of five years.

**4.** These proposed regulations concern FICA taxation of nonqualified deferred compensation plans. The claim does not provide any further explanation for why these proposed regulations are applicable to plaintiff's case.

Even if the Court accepts plaintiff's contention that this form of claim properly raised a claim that the payments were deferred compensation, the payments at issue in this case do not fall within the definition of a "nonqualified deferred compensation plan." Section 3121(v)(2)(C) defines "nonqualified deferred compensation plan" as "any plan or other arrangement for deferral of compensation." 26 U.S.C. § 3121(v)(2)(C). The regulations implementing this section provide that "[v]acation benefits, sick leave, compensatory time, disability pay, severance pay, and death benefits do not result from the deferral of compensation for purposes of section 3121(v)(2), even if those benefits constitute wages within the meaning of section 3121(a)." 26 C.F.R. § 31.3121(v)(2)–1.

Plaintiffs seek to rely on *Buffalo Bills, Inc. v. United States*, 31 Fed.Cl. 794 (1994), for the proposition that the severance payments in the instant case should be considered deferred compensation for FICA taxation purposes. The *Buffalo Bills* case is distinguishable from the present case in several respects. *Buffalo Bills* involved employment contracts for professional football players which provided for deferred compensation upon retirement. A portion of the payments to the football players represented compensation for wages earned in previous years. In the present case, the payments do not represent compensation for services performed in earlier years, and were not made pursuant to an employment contract. The payments to Cohen constituted severance pay in exchange for his early retirement. The severance plan at issue in this case did not provide an arrangement for deferred salary, but instead simply provided an incentive for voluntary retirement. IRS regulations clearly exclude these type of payments from the definition of "nonqualified deferred compensation plans."

The Court concludes that the payments in the present case constituted severance pay as well as accrued vacation and sick leave, and do not qualify for the special timing rules provided for nonqualified deferred compensation plans. Therefore, as discussed above, the payments were properly subject to FICA taxation when paid.

## V. CONCLUSION

For the reasons stated above, the Court hereby grants summary judgment in favor of the United States and against plaintiffs.

IT IS SO ORDERED.